[No. 7503.  Decided July 8, 1909.]

M. Lauber, *Plaintiff and Appellant*, v. C. E. Johnston, *Defendant and Appellant*.[1]

Sales—Contract—Passing of Title.  Upon the oral sale of a certain stack of hay, then upon the premises of the vendor, agreed to contain fifty and one-half tons, upon which $250 was paid, the title to the hay passes at once to the vendee, who assumed the risk of loss, even though the vendor was entitled to retain possession of a portion to secure full payment of the price.

Same.  Upon a sale of "all merchantable" hay upon the vendor's premises, which was to be separated from unmerchantable hay and baled by the vendor, and to be paid for at the rate of ten dollars per ton as removed from the premises by the vendee, the title to the hay does not pass until it is separated and baled, and the vendee assumes the risk of loss of the baled portion only.

Cross-appeals from a judgment of the superior court for Okanogan county, Steiner, J., entered December 3, 1907, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action on contract.  Affirmed.

*E. W. Taylor*, for plaintiff.

*R. P. Hoskyn* and *C. F. Sigrist*, for defendant.

Crow, J.—This action was commenced by M. Lauber against C. E. Johnston, to recover $1,129.25 for hay sold. The trial court entered judgment in favor of the plaintiff for $522.38.  Both parties have appealed.

There being a cross-appeal, we will refer to the parties as plaintiff and defendant.  The defendant has moved to dismiss the plaintiff's cross-appeal for want of a bond.  The record shows that, within the statutory time, the plaintiff filed an appeal bond, sufficient in form and amount.  The motion is denied.

The complaint pleads two causes of action, the first alleg-

[1]Reported in 102 Pac. 873.

ing an oral sale of one stack of hay, containing fifty and one-half tons, made November 15, 1905, at $9.50 per ton, upon which the defendant then advanced $250. The second cause of action was based upon a written contract reading as follows:

"Party of the first part [plaintiff], for and in consideration of ten dollars in hand paid, the receipt of which is hereby acknowledged, and other payments to be made and things to be done by the party of the second part [defendant], as hereinafter enumerated, promises and agrees to sell to the party of the second part all the merchantable hay except that which has been sold previous to the date of this contract, at the rate of ten dollars per ton for each and every ton of merchantable hay on the ranch of the party of the first part, located and situated on the west side of the Okanogan river, and about eight miles south of the town of Oroville of said Okanogan county, Washington. Party of the second part hereby promises and agrees to buy all the merchantable hay for sale by the party of the first part, as above mentioned, and pay for the same at the rate of ten dollars per ton for each and every ton. Party of the second part further agrees to have said hay baled before taking from the ranch of the party of the first part. Party of the second part further agrees to pay for said hay at the rate above set forth in advance, before removing the same from the ranch of the party of the first part; that is to say if the hay purchased is all hauled away at once, then the said purchase price must be paid in full for all hay purchased; but should said party of the second part remove said hay in small quantities, then said purchase price shall be paid at the time of said removal. And in case the entire amount of hay is not removed before the first of June, 1906, then the entire amount due on the hay remaining on the ranch of the party of the first part, shall be paid for at that time. But the party of the first part will give the party of the second part further time to remove said hay from his ranch, if time is desired. Party of the second part promises to pay for the baling of the said hay, and all expenses connected therewith. The ten dollars received and paid on this contract shall apply on the purchase price of said hay."

On this sale plaintiff claimed $900, less the $10 paid. The evidence shows that, after the defendant had hauled away five of the fifty and one-half tons of hay mentioned in the first cause of action, and after he had baled twenty-five tons of the hay mentioned in the second cause of action, all of the hay then remaining on the plaintiff's farm, including the twenty-five tons baled, was destroyed by fire. The controlling question on this appeal, therefore, is whether title had passed to the defendant. The trial court found that title to the fifty and one-half tons included in the first sale had passed to the defendant; that the title to the twenty-five tons which he had taken into his possession and baled had also passed to him, and entered judgment accordingly. The defendant contends that he had not acquired title to any of the hay, except the five tons removed, of the value of $47.50, and that he is entitled to a return of $212.50 of his advance payments, for which he demanded judgment. The plaintiff contends that title to all of the hay had passed; that he was entitled to recover for fifty and one-half tons at $9.50 per ton on the first cause of action, and for ninety tons at $10 per ton on the second cause of action.

The question as to when the title to personal property passes to a vendee under and in pursuance of a contract of sale, depends upon the intention of the parties. Whether the contract is executed or executory must be determined by its terms and purposes, the nature, conditions, and situation of the property sold, and the circumstances surrounding the parties. As to the first sale, there can be no serious question as to the intention of the parties. One certain stack of hay was selected and distinguished from others then on the plaintiff's land. The quantity of hay it contained was agreed upon at fifty and one-half tons. The purchase price was fixed. A partial payment was advanced, and the defendant removed a portion of the hay. The defendant, however, contends that he was not to remove the entire fifty and one-half tons until he made sufficient payments to settle for the same as taken.

The evidence on this point is conflicting, but even though the plaintiff was to retain the hay on his place until paid for, he did not retain the title, but the possession only. It is conceded that the terms of the first sale were fully agreed upon; that nothing remained for the vendor to do; that the selection was made, no further separation of the property being necessary. Under these circumstances we hold that title to the entire fifty and one-half tons immediately passed to the vendee, who then assumed the risk of loss, even though the vendor was entitled to retain possession of a portion of the property to secure full payment.

"When the terms of the contract of sale have been definitely agreed upon and the goods have been specifically ascertained, and nothing remains to be done by the seller except to deliver the goods, the effect of the contract, as between the parties thereto, will, unless a contrary intention appears, be to vest the title to the property immediately in the purchaser, even though the goods have not yet been delivered or paid for. The purchaser cannot, indeed, take the goods away until he has paid for them, unless a term of credit has been given, but the title and therefore the risk of the goods will be in him, and the seller may have his remedies for the price." Mechem, Sales, § 483.

See, also, Newmark, Sales, § 159; 2 Schouler's Personal Property, § 243. Mr. Mechem, in his work on Sales, at § 501, states certain rules that have been formulated to aid in ascertaining in doubtful cases the intention of parties to sales of personal property. The first rule is especially pertinent to plaintiff's first cause of action, and reads as follows:

"Where the terms of the contract have been definitely agreed upon, and the goods have been specifically ascertained, and nothing remains to be done by the seller except to deliver the goods, or by the buyer except to pay for them, the title will, unless a contrary intention appears, vest at once in the buyer, even though the goods have not been delivered or paid for. In this case, is has been seen, the buyer may retain possession until the goods are paid for; but it is possession which he thus retains and not title."

The plaintiff was entitled to recover the full amount of his claim on the first cause of action, as allowed by the trial court.

The evidence shows that several stacks on plaintiff's land which were the subject-matter of the written contract of sale, contained unmerchantable hay which had to be separated from merchantable hay as the work of baling progressed, and that the defendant had separated and baled twenty-five tons before the fire occurred. The plaintiff contends that the total amount of merchantable hay subject to defendant's order, both baled and unbaled, was ninety tons, and that he is entitled to recover therefor. The trial court, however, held that title to twenty-five tons only had passed to the vendee; that being the entire amount of merchantable hay actually separated from the unmerchantable and baled by him. The evidence and circumstances sustain this finding and conclusion. There is much conflict of authority as to when title passes on a sale of personal property which must be selected and separated from a larger mass. In *Anderson v. Crisp*, 5 Wash. 178, 31 Pac. 638, 18 L. R. A. 419, this court, after discussing the case of *Kimberly v. Patchin*, 19 N. Y. 330, 75 Am. Dec. 334, said:

"But it must be admitted that if all the property in the mass is not of equal value something more *does* remain to be done. Thus, in the case at bar, another element is injected into the contract, and there is a question of relative values to be yet determined. The appellants did not buy a portion of an indistinguishable mass where all the component parts were of equal value; but their contract called for 162,000 merchantable brick, and the evidence was that the brick that were deemed unmerchantable were thrown aside and not counted in when they came to haul them, so that it is impossible to determine, before the segregation of the brick, not only what particular brick were sold, but what relative portions of the kiln were sold; and while, as we have said before, it may be conceded that the intention of the parties will be carried into effect if it can be ascertained, yet under this contract it is impossible to ascertain not only the particu-

lar brick sold, but the actual relative number of brick sold by reason of the unsettled question of what brick were and what were not merchantable, creating an element of uncertainty in the contract which does not exist in those cases where the vendor sells a certain number of bushels of grain or a certain number of gallons of oil, or tons of hay, in an undivided mass, where all the different portions are of equal value."

The written contract contemplates a sale of merchantable hay only. If, as the evidence shows, some of the hay was unmerchantable, it would seem to have been the intention of the parties that title should pass to the merchantable hay as it was separated and baled by the defendant. The trial court so found, and we will not disturb such finding.

The third rule stated by Mr. Mechem in § 501, *supra*, of his work on Sales, is pertinent to plaintiff's second cause of action, and reads as follows:

"Where, though the specific goods are in a deliverable condition, there still remains some act, like measuring, weighing or testing, in order to determine the price, where the price is to depend upon the quantity or quality of the goods, the title usually will not pass, in the absence of evidence of an intention to the contrary, until this act is done."

The judgment is affirmed. Neither party will recover costs on this appeal.

ALL CONCUR.