[No. 10439. *En Banc.* October 8, 1913.]

LOUIS G. HEYBROOK *et al., Appellants,* v. J. F. BEARD *et al., Respondents.*[1]

LOGS AND LOGGING—SALE OF STANDING TIMBER—CONTRACT—TITLE, WHEN PASSES. A contract, drawn with legal nicety, whereby the owner of land sold and transferred the standing timber, with right of removal for seven years, at the expiration of which time uncut timber was to "revert" to the grantor, passes a present title to the timber.

SAME—CONTRACTS—CONSTRUCTION—TIME FOR PAYMENT. Under a contract for the sale of standing timber whereby the purchaser was to make monthly payments for all timber cut within ninety days after the same shall have been cut and delivered at the mill, the logs must either be taken to the mill within a reasonable time, or they must be taken to the mill and paid for within ninety days after they are cut; hence the purchaser is liable for logs cut and allowed to remain in the woods for over a year.

Appeal from a judgment of the superior court for Snohomish county, W. P. Bell, J., entered January 16, 1912, dismissing an action on contract, upon sustaining a demurrer to the complaint. Reversed.

[1]Reported in 135 Pac. 626.

*Coleman, Fogarty & Anderson,* for appellants.

*J. A. Coleman,* for respondents.

Gose, J.—This is an action upon a contract. A general demurrer was sustained to the amended complaint. Plaintiffs elected to stand upon the complaint and the action was dismissed, Plaintiffs have appealed.

The contract which forms the basis of the action was made on the 17th day of August, 1907, between the appellants as the first parties and the respondents William Brown and J. F. Beard as the second parties. The latter will be hereafter referred to as the respondents. The contract recites that the appellants, in consideration of $3,000 then paid to them by the respondents, and in consideration of the further payments to be made to them according to the stipulations contained in the contract, "have sold, assigned, transferred and set over and do by these presents sell, assign, transfer and set over" unto the respondents and "their heirs and assigns, all of the timber standing, lying and being on" one hundred and sixty acres of land described by governmental subdivisions; that the appellants

"for the consideration above mentioned, further grant to said second parties the right to enter upon the lands hereinbefore mentioned and described and to cut and remove the timber hereby sold and assigned to said parties of the second part, such right to continue for the period of seven years from the date hereof; it being understood and agreed that any timber which shall not have been cut and removed from said lands at the expiration of said period of seven years shall *revert* to and become the property of said parties of the first part, and said parties of the second part, their heirs or assigns, shall have no further title to, or claim upon the same;"

that the respondents should pay the appellants for the timber at the rate of $3.50 (per thousand) for such stumpage, the payments to be made as follows:

"The sum of three thousand dollars ($3,000) paid upon the delivery of this contract as above acknowledged is to

apply on such stumpage and no further payments are to be made by said parties of the second part until the value of the timber *cut* by them under this contract shall have aggregated said sum of three thousand dollars ($3,000).

"Thereafter, said parties of the second part shall pay to said parties of the first part for all timber *cut* by them under this contract at the rate hereinabove stipulated, *such payments to be made monthly, within ninety days after the same shall have been cut and delivered at the mill* herein agreed by said parties of the second part to be erected by them. Such payments shall be made upon a scale to be taken by a scaler furnished by the parties of the second part, provided, however, that said parties of the first part shall at any time have the option to employ a scaler to scale any or all of the logs or timber so cut by said parties of the second part, and in the event that the scale of said first parties shall not correspond and agree with the scale of said parties of the second part, then said matter shall be settled by such two scalers, choosing a third scaler, whose decision in said matter shall be final." (The italics are ours.)

It is alleged in the complaint, among other things, that, during the years 1909 and 1910, respondents cut from the land embraced in the contract, 2,270 logs, containing 452,-215 lineal feet of lumber, and left said logs in the woods; that thereafter the appellants had the logs scaled for the purpose of determining the quantity; that on the 6th day of April, 1911, the appellants demanded payment for the logs, and that on or about the month of August, 1911, the logs were destroyed by fire while lying in the woods.

There are two questions to be determined: (a) Whether the title to the logs passed to the respondents before their delivery at the mill; and (b) when the obligation to pay for the logs arose.

The appellants contend that the contract passed the present title to the logs. Respondents contend that the contract was executory, and that no title passed until the logs were delivered at the mill, and that the respondents had the privilege of cutting all the timber during the first year and re-

moving all of it to the mill during the seventh year. The contract is plain and precise in its terms and drawn with a legal nicety. Correctly interpreted, it means that the title to the timber passed subject to a reversion if the timber had not been "cut and removed" from the land within the seven-year period. The contract provides that no further payment shall be required "until the value of the timber cut" shall have reached the amount of the initial payment, and that thereafter the vendees shall pay the vendors "for all timber *cut* by them under this contract" at the rate stipulated, the payments to be made "monthly within ninety days after the same shall have been *cut and delivered* at the mill." The appellants had the logs scaled several months after they had been cut, and demanded payment. The logs were destroyed by fire about one year after they had been cut.

One of two views must obtain. The contract means either that the logs shall be taken to the mill within a reasonable time after they are cut, or that they must be taken to the mill and paid for within ninety days after they are cut. Under either view, the respondents are liable for the value of the logs. The whole tenor of the contract speaks a passing of the present title. Moreover, the word "revert" was used advisedly, and its meaning is well understood. There can be no reversion where the title to the thing that reverts has not passed from the vendor. The word itself signifies a passing of the title, and its return or revesting in the original owner. The question as to when the title to personal property passes to a vendee under a given contract depends upon the intention of the parties. This intention must be ascertained from the entire context of the contract. Whether the contract is executory or executed, must be determined by its terms and the nature of the property embraced in the transaction. *Lauber v. Johnston*, 54 Wash. 59, 102 Pac. 873; *Hatch v. Oil Co.*, 100 U. S. 124.

"Where it appears that there has been a complete delivery of the property in accordance with the terms of a sale, the

title passes, although there remains something to be done in order to ascertain the total value of the goods at the rates specified in the contract." *Hatch v. Oil Co., supra,* at page 135.

See, also, *Izett v. Stetson & Post Mill Co.,* 22 Wash. 300, 60 Pac. 1128.

In the following cases, similar contracts were considered and held to pass a present title: *Dennis Simmons Lum. Co. v. Corey,* 140 N. C. 462, 53 S. E. 300, 6 L. R. A. (N. S.) 468; *McRae v. Stillwell,* 111 Ga. 65, 36 S. E. 604, 55 L. R. A. 513; *White v. Foster,* 102 Mass. 375; *Brown v. Gray,* 68 W. Va. 555, 70 S. E. 276; *Hill v. Burton Lum. Co.,* 90 S. C. 176, 72 S. E. 1085; *Anderson v. Miami Lum. Co.,* 59 Ore. 149, 116 Pac. 1056; *Ciapusci v. Clark,* 12 Cal. App. 44, 106 Pac. 436.

A review of the cases cited by respondents would be profitless. Most of them are based upon contracts which may be differentiated. They merely announce certain well settled rules employed by the courts in the interpretation of contracts, but all the rules which they announce are subordinate to the one cardinal rule, *i. e.,* that the whole contract must be looked to for the purpose of arriving at the intention of the parties, and when that intention is ascertained, the contract will be enforced as written.

We think the amended complaint states a cause of action. The judgment is reversed.

Chadwick, Ellis, Main, Mount, and Morris, JJ., concur.