[No. 11700.   Department One.   June 30, 1914.]

## G. N. SKINNER, *Respondent*, v. GRIFFITHS & SONS, *Appellant*.[1]

SALES—DELIVERY—WHEN TITLE PASSES—"F. O. B. SCOW." Delivery of 5,000 herring boxes pursuant to the terms of sale, "f. o. b. scow" at Seattle, "alongside of the barge L.", operates *ipso facto* to pass the title to the purchaser, who thereafter assumes the risk of loss, if the articles corresponded to the terms of the contract and there was no stipulation making inspection a condition precedent.

SALES — WARRANTY — PERFORMANCE — EVIDENCE — SUFFICIENCY. Where part of 5,000 herring boxes were lost from a scow, and substantially half were recovered and found to conform to the terms of the contract of sale, the presumption is that all the boxes lost were of the same kind, and conformed to the contract.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered June 3, 1913, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Affirmed.

*Trefethen & Grinstead*, for appellant.

*Hastings & Stedman*, for respondent.

GOSE, J.—This is an action to recover the contract price for 5,000 knocked-down herring boxes. The cause was tried to the court, and terminated in a judgment for the plaintiff. The defendant has appealed.

The contract, which was in the form of a confirmatory letter addressed to the appellant, is, omitting immaterialities, as follows:

[1]Reported in 141 Pac. 693.

"Seattle, Wash., Nov. 18, 1912.

"Wish to acknowledge your verbal order of this morning for 5000 knocked down herring boxes . . . No. 1 Com Rgh . . . To be tied in bundles and delivered f. o. b. scow Winslow or Seattle, by November 30. . . . For your information we wish to state that No. 1 common grade calls for even thickness of lumber, and you may depend that these boxes will be up to grade. . . ."

The appellant, on the same date, in a letter addressed to the respondent, said: "We have your favor of this date confirming arrangement for 5,000 knocked down herring boxes, which is all in order." A few days later, the appellant directed the respondent to deliver the scow in the harbor at Seattle "alongside of the barge Louisiana." The scow, loaded with boxes which conformed to the agreement, was delivered alongside the barge Louisiana in the harbor at Seattle, and made fast to the barge by the latter's ropes a few minutes before five o'clock on Saturday, November 30, and the appellant was promptly advised of the delivery. Nothing was done in the way of unloading the scow until Monday morning, December 2, when it was found that the scow had settled and that the larger part of the boxes had been washed away.

The concrete question presented is, Did the title pass when the boxes were delivered at the place and in the manner agreed upon, in the absence of a stipulation making inspection a condition precedent to the passing of the title? In determining whether title has or has not passed by the contract, the primary consideration, under all of the authorities, is one of intention. *Pacific Lounge & Mattress Co. v. Rudebeck*, 15 Wash. 336, 46 Pac. 392; *Lauber v. Johnston*, 54 Wash. 59, 102 Pac. 873. The term f. o. b. scow at Seattle, means that the goods shall be delivered free on board the scow at Seattle, that is, delivered on board the scow at Seattle without expense to the purchaser. *Menz Lumber Co. v. McNeeley & Co.*, 58 Wash. 223, 108 Pac. 621, 28 L. R. A. (N. S.) 1007. We think the better rule is that a delivery of the article agreed upon, at the place and

in the manner agreed upon, operates *ipso facto* to pass the title to the purchaser. The buyer has a reasonable time after the delivery in which to examine the goods, and if they are not of the kind and quality ordered, he may then refuse to accept them, "but this right does not prevent the title from passing nor a recovery by the seller in an action for goods sold and delivered, if in fact they do conform to the terms of the contract: Tiedeman on Sales, § 112; *Brigham v. Hibbard*, 28 Ore. 386, 43 Pac. 383." This view is supported by *Murphy v. Sagola Lumber Co.*, 125 Wis. 363, 103 N. W. 1113. It was there held that, where the article sold has been delivered at the place and in the manner agreed upon, the title passes to the purchaser, and that the article sold is thereafter at the risk of the purchaser "if it corresponded in quality with the provisions of the contract." See, also, *Izett v. Stetson & Post Mill Co.*, 22 Wash. 300, 60 Pac. 1128; Williston, Sales, p. 358, rule 5, and p. 402. On the page last cited, the learned author thus states the rule:

"If the seller conforms to the authority given him, the property passes and the buyer's subsequent inspection merely enables him to satisfy himself that because the authority given the seller was properly exercised the property passed."

The appellant has cited *Lauber v. Johnston, supra.* In that case there had been a sale of "all the merchantable hay" on the ranch to the seller. The hay was destroyed by fire after a portion of it had been baled and accepted. The stacks contained both merchantable and unmerchantable hay. Upon these facts, we held that the title to the hay remained in the seller until it was separated and baled. The appellant has also cited *McNeal v. Braun*, 53 N. J. L. 617, 23 Atl. 687, which seemingly supports his contention. We think, however, that the view we have announced is the sounder one. If the appellant desired to make inspection a condition precedent to the passing of the title, it should have so stipulated in the contract.

It is also contended that the loss of the boxes was due to

the negligence of the respondent, in that the hatches were not battened and that the scow was unseaworthy and leaked. These are questions of fact which the court resolved against the appellant upon abundant competent testimony. The testimony is that there was a high wind in the early morning of December 2, and that it was blowing above thirty miles an hour from one o'clock in the morning. The wind reached its maximum about 7:51 that morning, when it was blowing forty-three miles an hour.

It is also argued that there is no proof that the lost boxes were of an even thickness. This position is not tenable. Four hundred and ninety-five bundles were taken off the scow. The respondent's agent testified that, including these boxes, twenty-eight hundred and seventy-one boxes were recovered and actually delivered to the appellant. The appellant concedes that it received twenty-one hundred and one boxes, made up of salvage and the boxes that were upon the scow. The testimony shows that these boxes conformed to the contract. There is no testimony to the contrary. This clearly made a *prima facie* case. If substantially one-half of the boxes were recovered and received by the appellant and conformed to the contract, the presumption is that the boxes lost were of the same kind.

The respondent was also allowed to recover an item for salvage. We cannot say, in the light of the testimony, this recovery was not proper.

The judgment is affirmed.

Crow, C. J., and Main, J, concur.

Ellis, J. (concurring)—I concur in the result, but not upon the ground given in the opinion. The confirmatory letter which is set out in the opinion contains the following language:

"For your information we wish to state that No. 1 common grade calls for even thickness of lumber, and you may depend that these boxes will be up to grade . . ."

This was, in my opinion, an express warranty that the boxes would be up to the grade so defined. This warranty would survive acceptance and use of the boxes by the purchaser. An action for damages thereon could be maintained by the purchaser in case he discovered after acceptance or use that the boxes did not conform to the warranty. No inspection prior to acceptance was incumbent upon the purchaser. Hence, under any view of the matter, the title passed upon delivery in the manner and at the place specified in the letter and more particularly specified by the purchaser "alongside of the barge Louisiana." Had the sale been subject to inspection, a very different question would have been presented, and no title would have passed until a reasonable time for inspection had elapsed, or until a waiver of the right to reject by an acceptance, without inspection. *Hurley-Mason Co. v. Stebbins, Walker & Spinning*, 79 Wash. 366, 140 Pac. 381; *Fairbanks Steam Shovel Co. v. Holt & Jeffery*, 79 Wash. 361, 140 Pac. 394. The foregoing are antithetical cases illustrating the two principles. The first is an example of a sale subject to inspection by given tests, upon which the remedy for failure to meet the tests did not survive acceptance. It was waived by failure to inspect or test. The second was a sale with express warranty on which the remedy did survive acceptance, though the defect might have been discovered by physical inspection. In the case here, the sale being on a warranty and not subject to inspection, it seems to me the title passed upon delivery alongside the barge Louisiana.