[Civ. No. 2035. Third Appellate District—April 26, 1920.]

# CHARLES A. HUMPHRY, Doing Business, etc., Respondent, v. FARMERS UNION AND MILLING COMPANY (a Corporation), Appellant.

[1] CONTRACTS — SALE OF BEANS — CONSTRUCTION OF TELEGRAMS — RIGHT OF INSPECTION.—In this action to recover damages for the alleged breach of a contract in and by which it was claimed that defendant agreed to sell to plaintiff a specified quantity of re-cleaned pink beans at a given price, a fair construction of the telegrams passing between plaintiff and defendant showed that they met upon a definite proposition and agreement. The fact that to the telegram from plaintiff's bank guaranteeing payment of draft with bill of lading attached, as requested by defendant, there was added the words, "subject permission inspection on arrival," did not prevent a meeting of the minds of the parties, as the law would have added those words to the contract even if they had not been inserted in the telegram.

[2] ID.—TRANSMISSION OF REPLY — CONSUMMATION OF CONTRACT.— After plaintiff's bank had telegraphed its guarantee of payment, as requested by defendant, although such telegram had not been delivered, and after all the terms and conditions imposed by defendant had been accepted, defendant could not prevent the consummation of the contract by telegraphing plaintiff that his wire was received too late and that the entire matter was canceled.

[3] ID.—PLACE OF PAYMENT—CONSTRUCTION OF TELEGRAMS.—The telegram from defendant to plaintiff instructing the latter to have his bank wire guarantee of payment of draft with bill of lading attached and the telegram from such bank in response to such demand worded, "We guarantee payment your draft, bill of lading attached," showed that the understanding of the parties was that the goods were to be paid for at the point of destination, and not at the point of shipment, notwithstanding the telegram from defendant to plaintiff quoted the price of such goods "F. O. B." the point of shipment.

[4] ID.—BREACH—ACTION FOR DAMAGES—PRICE—EVIDENCE.—Where, in such action for damages for breach of contract to sell certain beans, the only evidence before the court as to the amount the

---

1. Acceptance of offer with condition that law would imply, note, 1 A. L. R. 1508.

2. Time when contract consisting of letters or telegrams showing offer and unconditional acceptance is complete, notes, 6 Ann. Cas. 378; 6 L. R. A. (N. S.) 1016; L. R. A. 1916A, 1302.

plaintiff would have had to pay for equivalent beans was the price at which equivalent beans could have been bought at the point of shipment, the trial court was justified in accepting that price as the price at which plaintiff could have bought equivalent beans in the market nearest the place of delivery.

APPEAL from a judgment of the Superior Court of San Joaquin County.  J. A. Plummer, Judge.  Affirmed.

The facts are stated in the opinion of the court.

Nutter, Hancock & Rutherford for Appellant.

A. H. Ashley for Respondent.

ELLISON, P. J.; *pro tem.*—Plaintiff brought this action to recover damages for the alleged breach of contract in and by which it was claimed that defendant agreed to sell to it eighty thousand pounds of recleaned pink beans at the price of $6.35 per hundred pounds F. O. B. Stockton, California. After trial the court found that the contract was executed, as alleged in the complaint, and that the defendant neglected and refused to deliver the beans as therein contracted to be delivered to the damage of the plaintiff in the sum of $550, and entered judgment against the defendant for that amount.  The defendant appeals from the judgment.

The contract, if one was made, resulted from certain telegrams passing between the plaintiff and defendant.

For a reversal the defendant and appellant relies upon three propositions: First, that the telegrams did not constitute an agreement; second, that the seller was entitled to be paid at Stockton, and third, that if the place of delivery was Evansville, Indiana, damages should have been based upon the price at which respondent could have bought equivalent beans in markets nearest Evansville, Indiana, and not at Stockton.

[1]  I. We are of opinion that a fair construction of the telegrams leads to the conclusion that the parties met upon a definite proposition and agreement.  In the telegram of November 14, 1916, the defendant said: "Cannot sell at price you name.  Can sell eighty thousand pounds pink $6.35 F. O. B. Stockton.  Railroad says cannot furnish empty cars promptly.  The prospect of shipment getting through

unfavorable. Order subject delay and confirmation." To this telegram the plaintiff, on November 15th, replied as follows: "Answering telegram accept pink $6.35. Must ship during November. Do the best you can." This was not an unconditional acceptance of the proposition made in the telegram of November 14th, above quoted. The defendant had stated in his telegram of November 14th, that the railroad could not furnish empty cars promptly and that the prospect of shipments getting through promptly was unfavorable, and that the plaintiff must order subject to delay and confirmation. The answer to this telegram was that the goods must be shipped during November, which was not agreeing to accept the beans subject to delay. On November 17th, the defendant, however, telegraphed as follows: "Eighty thousand pounds recleaned pink beans ready. Car obtainable. Have your bank wire guarantee payment draft with bill of lading." This was a statement by the defendant in effect that it could ship as requested by the plaintiff during the month of November, because it stated therein, "car obtainable." It was a statement that there would be no delay, and that if the beans were bought they could be loaded at once, but it contained a new proposition which had not been suggested before, namely, "have your bank guarantee payment draft with bill of lading." On November 18, 1916, the plaintiff's bank, the Citizens National Bank of Evansville, Indiana, wired the defendant as follows: "We guarantee payment your draft bill of lading attached, Evansville, commercial pink beans at $6.35, subject permission inspection on arrival." This was a meeting of the minds of the parties upon the same terms and conditions, save and except that the last telegram referred to had in it these words, "subject permission inspection on arrival." The matter of delay in shipment had been eliminated, the request that the bank guarantee payment had been accepted, and all conditions imposed by defendant had been met, qualified by the added suggestion that the beans would be subject to inspection on arrival.

It is the claim of counsel for appellant that it never assented to the plaintiff's request that the beans should be shipped subject to inspection, but, as the learned judge of the trial court observed, the law would have added these

words to the contract even if they had not been inserted in the telegram.

Section 1771 of the Civil Code reads: "One who sells or agrees to sell merchandise inaccessible to the examination of the buyer, thereby warrants that it is sound and merchantable." Section 1785 of the Civil Code reads: "On an agreement for sale, with warranty, the buyer has a right to inspect the thing sold, at a seasonable time, before accepting it; and may rescind the contract if the seller refuses to permit him to do so."

In the case of *Newmark & Co.* v. *Smith,* 26 Cal. App. 339, [149 Pac. 1064], it is said: "The purchaser under a contract of sale of a certain quantity of beans is entitled, in the absence of a waiver of the right, to inspect the property sold as a condition precedent to the making of payment, and the seller is not entitled upon the tender of delivery to refuse such inspection and demand payment, and for failure to make payment to declare the contract annulled."

We are of opinion that the telegrams passing between the parties resulted in a contract between them. [2] The defendant's telegram of November 18th, wherein it says, "wire received too late, entire matter is canceled," was sent after the Citizens National Bank had telegraphed its guarantee of payment of the draft and after all the terms and conditions imposed by defendant had been accepted, and was too late to prevent the consummation of the contract. The wire accepting defendant's offer took effect on its deposit at Evansville for transmission. (Civ. Code, secs. 1582, 1583.) It was deposited at Evansville, Indiana, before the defendant's telegram of November 18th was sent.

[3] II. Some discussion is indulged in upon the meaning of the expression, "F. O. B. Stockton," it being the claim of appellant that this expression not only meant that the goods were to be placed on the car by the seller without any expense to the buyer, but, also, that it meant that upon their being loaded ready for shipment the purchase price was then due and payable and at the place of shipment.

We deem it unnecessary to examine critically whether the expression F. O. B. includes not only loading, but the right to have payment at the place of loading, because even if the expression in general does mean both loading and payment, the parties can contract differently. The telegrams in this

case conclusively show that if a sale were made it was the understanding of the parties that the goods were not to be paid for in Stockton, but were to be paid for in Evansville, Indiana.   The telegram of November 17, 1916, sent by the defendant, ''Have your bank wire guarantee payment draft with bill of lading,'' was a clear expression by the defendant that payment was not expected until the goods were received in Indiana, together with the bill of lading, and the guarantee of the Citizens National Bank in response to the demand for the guarantee, ''We guarantee payment your draft, bill of lading attached,'' could mean nothing else than that the bank guaranteed that when the bill of lading reached Evansville, together with the draft, that the same would be paid at that place, and not at Stockton.

[4]   III.   Lastly, it is claimed by appellant that if the place of delivery was to be Evansville, Indiana, damages should have been based upon the price at which respondent could have bought equivalent beans in the market nearest Evansville and not at Stockton, and this contention is predicated upon the provisions of section 3354 of the Civil Code, wherein, in substance, it is provided that in estimating damages the value of the property to a buyer deprived of its possession is deemed to be the price at which he might have bought the equivalent thing in the market nearest the place where the property ought to have been put into his possession, and at such time after the breach of duty upon which his right to damages is founded as would suffice, with reasonable diligence, for him to make such a purchase.

Respondent introduced evidence tending to show the price at which equivalent beans could have been bought at Stockton, and no evidence of the price at which they could have been bought at any other place was introduced by either party.   There is nothing in the record to show that the beans could have been bought at any less price at any place nearer Evansville.   The price at which the beans could have been bought at Stockton was the only evidence the court had before it as to the amount the plaintiff would have had to pay for equivalent beans.   There is no evidence in the record, either on behalf of plaintiff or defendant, and none offered by the defendant, tending to show what the market price of such beans was at any place nearer Evansville than the city of Stockton.   We think, under the circumstances,

that the court was justified in accepting the proved price at the city of Stockton as the price at which respondent could have bought equivalent beans. If there was any place nearer Evansville at which they could have been bought then the matter was entirely open for the defendant to make such proof. It made no attempt to do so. It sufficiently appears from the record that permitting the evidence of the market price of beans at Stockton instead of confining the proof to some unnamed place east of the Rocky Mountains was a benefit to the appellant instead of an injury. The fact that the plaintiff was buying beans at Stockton to be shipped to Indiana, and paying the transportation charges thereon, is presumptive evidence that the market price of beans was less in California than in Indiana, otherwise the plaintiff was unbusinesslike in buying them. The appellant is not entitled to complain of a ruling that resulted in a benefit to it and a smaller judgment than otherwise might have been obtained.

We think the judgment is right and should be affirmed, and it is so ordered.

Hart, J., and Burnett, J., concurred.