[No. 16152. *En Banc.* January 20, 1922.]

## GRAY & BARASH, INCORPORATED, *Respondent,* v. PUGET SOUND NAVIGATION COMPANY, *Appellant.*[1]

SALES (85)—CONTRACT—WHEN TITLE PASSES—INTENT—EVIDENCE —SUFFICIENCY. Whether title to a chattel has or has not passed by a contract of sale is a matter determinable by the intention of the parties, which is controlling, if clearly and unequivocally manifested by their agreement; and where the title must rest in one of two persons, evidence which determines the title as between them will determine it as between one of them and a stranger to the title who asserts it to be in the other.

CARRIERS (27, 33)—OF GOODS—LOSS OF OR INJURY TO GOODS— LIABILITY—PROOF OF TITLE. Where an electric motor, in course of shipment by carrier between the prospective seller and buyer of the motor, is damaged by the negligence of the carrier, the seller is the proper party to maintain action against the carrier, if there had been in fact no acceptance of the motor by the buyer, no payment of any part of the purchase price, no consummated sale, and the mutual dealings of the parties had been closed on the basis that no sale had taken place.

SAME (27, 33). Where damages are sought from a common carrier for injury to property while in its possession for carriage, and it has no interest in the ownership of the property other than that of not being called upon to answer more than once for its wrong, the same high degree of proof of ownership is not required as is the case when a contest is between individuals each claiming the title.

Appeal from a judgment of the superior court for King county, Frater, J., entered March 19, 1920, upon findings in favor of the plaintiff, in an action for injury to goods while in transit, after a trial on the merits to the court. Affirmed.

[1]Reported in 203 Pac. 975.

*Bronson, Robinson & Jones,* for appellant.
*Palmer & Askren,* for respondent.

FULLERTON, J.—In November, 1917, the respondent, Gray & Barash, Inc., who was then engaged in the machinery business at Seattle, contracted to sell to the Puget Sound Traction, Light & Power Company, of Bellingham, an electric motor. The motor was shipped shortly after the contract was entered into. On its receipt by the traction company, it was found to be defective, the defect apparently having been caused by some accident happening while the motor was in transit. On discovering the defect, the traction company called the attention of the respondent to it and was directed by the respondent to return the motor to the shops of the respondent at Seattle for repairs. The traction company delivered the motor to the appellant, Puget Sound Navigation Company, for transportation in accordance with the respondent's direction, and that company, in attempting to load the motor from a wharf onto one of its boats, dropped the motor into the salt waters of Puget Sound. The motor remained in the water from the evening of November 24th until the morning of the 28th of the same month, when it was recovered and carried on to Seattle. The submergence of the motor in the salt water so injured it as to require rewinding of the stator of the motor, and this the respondent did, at a cost to itself in labor and materials of six hundred and fifty dollars. The motor, after its repair, was again forwarded to the traction company, who later declined to accept as a compliance with the contract of sale and returned it to the respondent. The respondent thereupon disposed of it as its own property to a third party.

In this action the respondent seeks to recover from the appellant the expense incurred in repairing the

motor due to its submergence in the salt water. In its complaint, in addition to. alleging facts showing liability on the part of the appellant, it alleged that it was the owner of the property at the time of the injury, and that it had been damaged by reason of the injury in the amount it had expended in making the repairs. The answer of the appellant took issue on these allegations only. On the trial the only question contested was the question of ownership; the appellant contending that the title to the motor at the time of the injury was in the traction company, and that the respondent was without right to maintain the action. The cause was tried to the lower court sitting without a jury and resulted in a judgment in accordance with the prayer of the respondent's complaint.

The principal controversy in this court is over the question of ownership of the motor at the time of the injury. The contract of sale was oral; at least no written contract was introduced in evidence. Testifying as to its terms, the president stated that the terms of the sale were cash on thirty days' time, subject to the guaranty that the motor would work satisfactorily for one year. The superintendent of the traction company testified to the same effect, other than that he stated that the guaranty was that the motor would work satisfactorily. Each of them testified that no part of the purchase price was ever paid, that the motor did not work satisfactorily, and that the sale was never consummated. In addition to this, the president of the respondent testified that the respondent was the owner of the motor at the time of the injury, and that it had suffered the loss caused to the motor by the act of the appellant in dropping it into the water. On cross-examination, it was developed that the respondent, on returning the motor to the traction company after the injury had been

·repaired, billed the cost of the repair to the traction company, and that the traction company presented the bill to the appellant with a demand for its payment, saying in the letter containing the demand that "we are merely charging you for the material and labor used in repairing this machine, and not making a claim for damage due to the loss of time on account of the fact that we did not have this motor when we needed it very badly."

· It is a general rule that, in determining whether the title to a chattel has or has not passed by a contract of sale, the primary consideration is one of intention; that the agreement is what the parties intended to make it; and if the intention is manifested clearly and unequivocally, it controls. *Pacific Lounge & Mattress Co. v. Rudebeck,* 15 Wash. 336, 46 Pac. 392; *Lauber v. Johnston,* 54 Wash. 59, 102 Pac. 873; *North Idaho Grain Co. v. Callison,* 83 Wash. 212, 145 Pac. 232.

It is the rule, also, that when title to a chattel must rest in one of two persons, evidence which determines the title as between them will determine it as between one of them and a stranger to the title who asserts it to be in the other. *Union Feed Co. v. Pacific Clipper Line,* 31 Wash. 28, 71 Pac. 552.

The evidence, when tested by these principles, we think clearly justifies the conclusion of the trial court. The argument to the contrary is based upon the terms of the contract of sale, as testified to by the representatives of the parties to it, and upon the fact that the traction company demanded payment for the cost of repairing the injury. But we cannot think these conclusive of the question. The contract is not inconsistent with the idea that a present title did not pass, and the other fact is explainable on the theory that the

parties then believed that the sale might thereafter be consummated and the traction company ultimately become the sufferer from the loss. But treating this part of the evidence as inconsistent with the present claims of the parties to the contract, we are unable to conclude that it overcomes the more positive evidence to the contrary. There was in fact no acceptance of the motor, no payment of any part of the purchase price, and no consummated sale, and the parties to the contract closed their mutual dealings on the basis that no sale had taken place. The parties to the contract are therefore estopped, as between themselves, from asserting an actual sale, and of course estopped from asserting it as against any one else. Since, as between the parties, no present sale was intended or contemplated by the contract, and since that intent governs the rights of the appellant, we see no just reason why it should not be held to respond to the respondent for the injury committed by it.

Furthermore, when it is remembered that the appellant is a common carrier, that it wrongfully injured the property while it had the property in possession for the purpose of carriage, and that it has no interest in its ownership other than that it shall not be called upon to answer more than once for its wrong, it would seem that the same high degree of proof of ownership would not be required as is required when the contest is between individuals each claiming the title. It is true, of course, that a carrier who wrongfully injures property while in its possession for the purpose of carriage is not called upon to answer to one without interest, even though the party in interest refuses to assert his right. But this is not the present case. Here the party making the assertion has a substantial interest. As we have

shown, it is the sufferer from the loss and must bear it if it may not recoup from the appellant.

The judgment will stand affirmed.

PARKER, C. J., MAIN, HOLCOMB, TOLMAN, BRIDGES, and MACKINTOSH, JJ., concur.