[No. 28611. Department Two. July 3, 1942.]

R. O. PEARCE, *Appellant,* v. DULIEN STEEL PRODUCTS, INC., *Respondent.*[1]

[1]Reported in 127 P. (2d) 271.

*Cosgrove, Terhune & Schlosstein,* for appellant.

*Robbins & Rickles,* for respondent.

BLAKE, J.—This is an appeal by plaintiff ·from an order dismissing the action after a demurrer to his amended complaint had been sustained.

It is alleged in the amended complaint: That respondent is engaged in the business of buying and selling steel products; that, on October 22, 1940, appellant, by letter, offered to buy two cars of "70 lb. rail and angle bars at this time for $15.00 per gross ton f. o. b. Armstead. . . ." To his proposal, respondent replied under date of October 23, 1940: "We would not be interested in selling two . . . cars at any price of $15.00, but would accept price on two cars to help you out at $17.50 G. T." On November 9th, appellant responded to this counterproposal as follows:

"Pursuant to my telephone conversation with Mr. White today and in answer to your letter of October 23, please be advised that we will purchase from you two carloads of No. 1 70-pound relay rail at $17.50 per gross ton, f. o. b. cars, Armstead, Montana.

*"Hunt will inspect this rail for our customer and will probably designate rail to be rejected or accepted."* (Italics ours.)

In response to this letter, respondent wrote appellant

a letter on November 12th, in which, among other things, it was stated:

" . . . *we do not agree to the matter of Hunt's inspection.* Our experience with this inspection in the past has been unsatisfactory in some cases and we do not wish, in filling your order on the two cars, to be put to any expense whatever in the matter of preparing the RAIL for shipment. *We are not selling you subject to Hunt's inspection No. 1."* (Italics ours.)

To this, under date of November 15th, appellant replied:

"In answer to your letter of October 23rd please be advised that if Hunt is to inspect the two cars of rail for my customer, any expense incident thereto will be borne by the customer or myself."

Replying to this letter on November 18th, respondent said:

"We . . . wish to reiterate' . . . our letter of November 12, and we will not under any circumstances on this order have anything to do with any inspection of Hunts."

There are six other letters—three from appellant to respondent, and three from respondent to appellant—under subsequent dates, set out in the complaint. These, so far as relevant, will be noticed later in discussing one of the contentions made by appellant. It is primarily upon respondent's letter of October 23rd and his own reply thereto under date of November 9th that appellant relies as the contract for breach of which he seeks damages in this action. He alleges in his amended complaint, however:

"That at the time of the execution of the contract aforementioned a general and universal custom prevailed for the sale of steel rails wherein the buyer of steel had the right to inspect or designate an inspector either at the place of shipment or at the destination."

This allegation of custom, or, more properly,

usage, cannot avail appellant anything unless there was, in fact and law, a contract consummated by the correspondence to which we have referred. For it is well settled that, when there is no contract, proof of usage will not make one. Lawson on Usages and Customs, p. 370, § 185; 27 R. C. L. 172, 173, § 20; *Thompson v. Riggs,* 5 Wall. (72 U. S.) 663, 18 L. Ed. 704; *Savings Bank v. Ward,* 100 U. S. 195, 25 L. Ed. 621; *Thomas v. Guarantee Title & Trust Co.,* 81 Ohio St. 432, 91 N. E. 183, 26 L. R. A. (N. S.) 1210.

So, we come to the principal question in the case: whether appellant's letter of November 9th was an unqualified acceptance of the offer made by respondent in its letter of October 23rd to sell appellant two cars of rail and angle bars at $17.50 a gross ton.

It will be remembered that, in his letter of November 9th, purporting to accept respondent's offer, appellant interjected "Hunt will inspect this rail for our customer and will probably designate rail to be rejected or accepted." Respondent promptly (November 12th) replied: ". . . we do not agree to the matter of Hunt's inspection. . . . We are not selling you subject to Hunt's inspection No. 1." It is indisputable that the parties' minds did not meet on the matter of Hunt's inspection. But appellant contends that, in contemplation of law, the statement in his letter of November 9th that "Hunt will inspect . . ." did not constitute a conditional acceptance of respondent's offer. This contention is based on the theory that the demand for inspection by Hunt was nothing more than he was entitled to under Rem. Rev. Stat., § 5836-47 [P. C. § 6227-47], subd. (2), which provides:

"Unless otherwise agreed, when the seller tenders delivery of goods to the buyer, he is bound, on request, to afford the buyer a reasonable opportunity of examin-

ing the goods for the purpose of ascertaining whether they are in conformity with the contract."

This is but a statutory declaration of the common-law rule (*Price v. Neiman Bros. Co.*, 240 Ill. App. 157) which has been recognized and applied in the decisions of this court. *Skinner v. Griffiths & Sons*, 80 Wash. 291, 141 Pac. 693; *Tacoma & Eastern Lbr. Co. v. Field & Co.*, 100 Wash. 79, 170 Pac. 360. But it does not follow that the purchaser has a right to have the inspection made by a person who is not acceptable to the vendor. Implicit in the statute (Rem. Rev. Stat., § 5836-47) is recognition that right of inspection is subject to such agreement as the parties may see fit to make. Of the consequences of such an agreement, this court, in *Dickson v. Darnell*, 98 Wash. 301, 308, 167 Pac. 937, said:

"It is a well established rule that, where parties to a contract of sale agree that the quality of the thing sold shall be determined by an inspection to be made by a particular person, or a person holding a particular position, such determination is conclusive upon the parties and cannot be impeached except for fraud, collusion or palpably arbitrary action."

Such being the consequence of an agreement to inspection by a third party, it seems clear that appellant's insistence that "Hunt will inspect . . . and will probably designate rail to be rejected or accepted" constituted a conditional acceptance of respondent's offer. Indeed, if the latter had delivered the rails without repudiating the stipulation of inspection by Hunt, contention could well have been made that it was bound by Hunt's determination. We are of the view that appellant's letter of November 9th was not an unqualified acceptance of the offer contained in respondent's letter of October 23rd. See *Phoenix Iron & Steel Co. v. Wilkoff Co.*, 253 Fed. 165, 1 A. L. R. 1497.

On the contrary, it amounted to a new offer, which never was accepted by respondent. *Coleman v. St. Paul & Tacoma Lbr. Co.*, 110 Wash. 259, 188 Pac. 532.

*Humphry v. Farmers Union & Milling Co.*, 47 Cal. App. 211, 190 Pac. 489, a case upon which appellant puts much reliance, is readily distinguishable. There, the acceptance of the offer was "subject permission inspection on arrival." The court very properly held this to be an unqualified acceptance because the stipulation for inspection demanded nothing more than the law accorded the purchaser.

Appellant contends that, in any event, it waived inspection by Hunt. In support of this contention, he relies upon three letters he wrote to respondent under dates of November 26th, December 10th, and December 17th, respectively. These letters were all written upon the assumption that a contract had *theretofore been consummated*; but there had not been. As we have pointed out, by injecting the element of inspection by Hunt into his letter of November 9th, appellant rejected respondent's offer of October 23rd. Having once rejected the offer, he could not revive it by tendering acceptance. 12 Am. Jur. 530, § 36; Restatement of the Law of Contracts, p. 45, § 37; *Minneapolis & St. L. R. Co. v. Columbus Rolling-Mill*, 119 U. S. 149, 30 L. Ed. 376, 7 S. Ct. 168.

Judgment affirmed.

ROBINSON, C. J., BEALS, MILLARD, and JEFFERS, JJ., concur.