[Civ. No. 16176. First Dist., Div. One. Feb. 15, 1955.]

SAM FINMAN, INC. (a Corporation), Appellant, v. ROKUZ HOLDING CORPORATION (a Corporation) et al., Respondents.

Morris M. Grupp and Lewis, Field & DeGoff for Appellant.

Julius Mackson for Respondent.

BRAY, J.—This appeal by plaintiff from an order granting change of venue from the city and county of San Francisco to the county of Los Angeles raises principally the question of whether there was a contract between the parties entered into in San Francisco.

## RECORD

Plaintiff's complaint sought damages for an alleged breach of contract by defendant Rokuz Holding Corporation to lease certain San Francisco realty, or a breach by defendant Lyon* of a warranty that Lyon was authorized to bind Rokuz in said contract. Defendant Lyon moved to change the place of trial to Los Angeles on the ground that Lyon personally, the partnership and its members, and the Rokuz Corporation, were residents of the county of Los Angeles; that there was no contract entered into or to be performed in San Francisco and in fact no contract at all; and that Los Angeles County is the proper place of trial. Attached to the affidavit of merits accompanying the motion were three letters. Attached to plaintiff's complaint were two letters and a telegram. All these documents will be considered later.

Lyon, being residents of Los Angeles, were entitled to have the case transferred there, unless there was a contract and it was entered into in San Francisco. (See Code Civ. Proc., § 395.) (There is no contention that any of the provisions of that section other than the one providing venue in the county where the contract was entered into, would apply.)

## THE FACTS

Preliminarily, two rules of law must be borne in mind. (1) The nature of the *cause of action* so far as it affects

---

*The defendants referred to herein as Lyon, are Phillip Lyon and Phillip Lyon Company, a partnership comprised of Phillip Lyon and Irving E. Daniels, and are real estate brokers.

or determines the place of trial will be ascertained from the complaint alone, and the court will inspect the complaint for the purpose of determining the character of the action and the judgment which may be rendered. (See *Kaluzok* v. *Brisson*, 27 Cal.2d 760 [167 P.2d 481, 163 A.L.R. 1308]; *Sims* v. *Mains*, 131 Cal.App. 307 [21 P.2d 447]; 25 Cal.Jur. 907; 11 Cal.Jur. 10-Yr.Supp. 337.) Here the complaint on its face alleges either a contract to lease real property entered into by Rokuz through its authorized agent Lyon or the entering by Lyon into a contract in the name of Rokuz without believing in good faith that he had authority to do so. (Civ. Code, § 2343, subd. 2, makes an agent liable in the latter event.) However, attached to the complaint are the three documents which plaintiff alleges constituted the contract. Thus it is necessary to examine them to determine whether the action is one on contract and if so, where it was executed.

While only the complaint is to be considered to determine the *nature* of the cause of action, the affidavit of a defendant in a venue proceeding may be considered with the complaint to determine where the contract sued upon was entered into. (*Sexton* v. *Simondet*, 97 Cal.App.2d 894 [218 P.2d 1021], where although plaintiff alleged the contract to have been entered into and to be performed in Sacramento County, the reviewing court examined the contract annexed to the defendant's affidavit and found to the contrary. See *Crofts & Anderson* v. *Johnson*, 101 Cal.App.2d 418 [225 P.2d 594].) Therefore, in determining the question of whether there was a contract entered into in San Francisco, we must examine not only the complaint and its exhibits, but also the defendants' affidavit which includes the additional correspondence between the parties. Necessarily, the determination of where the contract was entered into, involves the question of whether there was a contract. (See *Johnson* v. *Benton*, 73 Cal.App. 571 [239 P. 63].) If the evidence is conflicting on either subject, we are bound by the lower court's determination. Unless it appears from the complaint and affidavit as a matter of law that there was a contract entered into in San Francisco, the order granting the change of venue must be affirmed.

The facts are to be gleaned from the correspondence, which is undisputed. The correspondence was between Trevor and Company* realtors in San Francisco, and Lyon at Los Angeles representing Rokuz, a New York corporation qualified to do

---

*Herein called ''Trevor.''

business in California, with its offices in Los Angeles. After certain negotiations between Trevor and Lyon, Trevor on August 24, 1951, at San Francisco wrote Lyon at Los Angeles setting out generally the terms upon which plaintiff would be willing to lease Rokuz's property. August 28th, Lyon at Los Angeles wrote Trevor at San Francisco stating that the owners were agreeable to entering into a lease of the premises with plaintiff on the terms and conditions therein set forth. "If the matter set forth is satisfactory, would you advise me promptly and I shall have the lease prepared and sent. to you for signature of the tenant." August 29th, Trevor at San Francisco wired Lyon at Los Angeles: "Re your letter August 28th 1951 re Finman matter, we are instructed by Mr. Finman to wire you as follows: 'Your leasing proposition as outlined in letter of August 28th 1951 and addressed to Mr. Heifetz of Trevor and Company is entirely satisfactory and accepted by me hereby proceed at once to close on that basis. Give present tenant notice as of September 1st so that I will have possession on December 1st 1951.' "

Plaintiff contends that the letter of August 28th was an offer by Rokuz through its authorized agent to lease to plaintiff on the terms therein stated and that Trevor's telegram was an acceptance in San Francisco of the offer by plaintiff, and that the letter and the telegram constituted a contract to lease. Defendants contend that they were merely part of the negotiations which were not yet completed. If the letter and the telegram constituted offer and acceptance instead of merely part of negotiations, then there can be no doubt that a contract was executed in San Francisco. Section 1583, Civil Code, provides: "Consent is deemed to be fully communicated between the parties as soon as the party accepting a proposal has put his acceptance in the course of transmission to the proposer . . ." ■ An offer may be accepted by telegram. (*See Wilson* v. *White*, 161 Cal. 453, 462 [119 P. 895].) ■ A telegram accepting an offer takes effect on its deposit for transmission. (*Humphry* v. *Farmers Union & Mill. Co.*, 47 Cal.App. 211, 214 [190 P. 489].) ■ "If a contract is made by exchange of letters or telegrams, it is held to have been made at the place where the letter is mailed, or telegram filed, containing an unconditional acceptance by one party of the offer of the other." (*Bank of Yolo* v. *Sperry Flour Co.*, 141 Cal. 314, 315 [74 P. 855, 65 L.R.A. 90].)

Before determining whether the letter and telegram con-

stituted offer and acceptance, let us consider the further correspondence of the parties. August 31st, Lyon at Los Angeles sent Trevor at San Francisco a letter enclosing original and copy of lease "which I think covers the subject matter of our discussion and correspondence. If this is satisfactory as to form," have it properly executed by plaintiff. A check for $4,000 was asked for. The letter then stated that Rokuz had suggested that a commission "be paid to us jointly" over the term of the lease of "3% monthly, or 1½% to each of us [presumably this meant that the commission was to be divided equally between Trevor and Lyon] . . . I would like to have your thoughts about this." September 5th, Trevor at San Francisco wrote Lyon at Los Angeles enclosing the original and copy of lease executed by plaintiff, informing him that Trevor had the $4,000 on deposit which he would forward to Lyon on return of the copy of the lease, and authorizing Lyon to turn the lease over to Rokuz upon complying with three conditions listed, all dealing with the removal of the present tenant of the property. Trevor then refused the proposed commission arrangement. September 11th, Lyon wrote Trevor enclosing the signature page of the lease and stated that the conditions in the letter of September 5th were not acceptable to Rokuz and regretting to have the deal "break up."

## Was There a Contract?

Plaintiff's cause of action against Lyon is based upon section 2343, Civil Code, which provides: "One who assumes to act as an agent is responsible to third persons as a principal for his acts in the course of his agency, in any of the following cases, and in no others: . . . 2. When he enters into a written contract *in the name of his principal,* without believing, in good faith, that he has authority to do so; . . ." (Emphasis added.) Therefore, if there was no written contract in the name of Rokuz there could be no contract entered into in San Francisco. While the letter of August 28th gave such conditions of the proposed lease as (1) the term, (2) requirement of removal of present tenant and delivery of premises 90 days thereafter but without blame if Rokuz unable to remove tenant, (3) rental, (4) taxes, (5) restrictions on use of premises, (6) alterations, it did not purport to contain all of the covenants in the usual lease of business property. While the form of lease thereafter sent turned out to be satisfactory to plaintiff, had it not been satisfactory even though containing the above-mentioned matters, it could

hardly be said that plaintiff was required by the telegram and letter to accept it, nor to limit the lease to the meager terms set forth in the letter. The letter does not purport to contain all the matters customarily included in a lease. For example, nothing is said about whether the rent is payable in advance or at any particular time during the month, nor about who shall make repairs. A reasonable construction of the letter is that it is a part of the negotiations for a lease giving the main terms but not being a final offer in itself. That this is the interpretation put upon the letter and the telegram by the parties is shown by Lyon's letter of August 31st sending the lease and requiring the payment of the first and last months' rental and of a commission. Neither of these matters was referred to in the letter of August 28th. Then plaintiff in his letter of September 5th required certain matters as a condition precedent to the lease taking effect, none of which were referred to theretofore. Of most importance here is the fact that the letter of August 28th does not purport to be a "written contract in the name of his principal" as required by section 2343, Civil Code. It merely states that the principal is "agreeable to entering into a lease . . ." *Nichols Grain & Mill. Co.* v. *Jersey Farm Dairy Co.*, 134 Cal.App. 126 [24 P.2d 925], cited by plaintiff, holds that section 2343 gives a "right of action upon the contract" against a person who enters into a written contract *in the name of his principal* without believing in good faith that he has authority to do so. There, however, the agent did more than state that his principal was "agreeable" to entering into a contract. He signed the letter on which the action was based "Robert Gardiner [the principal] by Geo. Masters [the agent]." In *Ferroni* v. *Pacific Fin. Corp.*, 21 Cal.2d 773 [135 P.2d 569], the contract in question was signed by the agent in the principal's name.

Assuming, as claimed by plaintiff, that the letter of August 28th and the telegram of August 29th appear on their faces to constitute an offer and an acceptance such as to make a contract by Lyon in the name of his principal Rokuz, such fact is not final in the determination of whether there actually was such a contract. This depends upon the intention of the parties. If they did not intend those instruments to constitute a contract, but merely intended them as steps in negotiations of a contract, then, however they appear on their faces, no contract was entered into. The subsequent letters show conclusively that neither party intended the two instru-

ments to constitute a contract between the parties but intended the negotiations to continue.

■ ˙ ''The intention of parties to a written contract is to be ascertained from the writing alone, if possible, but where the language is ambiguous and uncertain, resort may be had to the subsequent conduct of the parties for the purpose of discovering what they understood the agreement to mean. The acts of the parties under the contract afford one of the most reliable means of arriving at their intention; and, while not conclusive, the construction thus given to a contract by the parties before any controversy has arisen as to its meaning will, when reasonable, be adopted and enforced by the courts.'' (12 Cal.Jur.2d p. 341, § 129.) ·

■ As there was no contract between plaintiff and any of the parties entered into in San Francisco or at all, and as Lyon's residence is Los Angeles, the court properly changed the place of trial to the county of Los Angeles. .

In view of our decision we do not deem it necessary to consider certain other contentions raised by defendants, one of which is based upon the fact that plaintiff in nowise alleges that Trevor was plaintiff's authorized agent.

The order is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 13, 1955.