# Ladd *et al.* v. Smith, Trustee &c.

*Bill in Equity to set aside Transfer of Bank Stock for Fraud.*

1. *Judgment creditor may elect to go into equity to set aside fraudulent*

[Ladd *et al.* v. Smith, Trustee &c.]

*transfer by his debtor.*—A judgment creditor, on whose judgment execution has been issued and returned *nulla bona*, and which has been duly recorded by him, in the office of the judge of probate. has an election to proceed by bill in equity to have a subsequent alleged fraudulent transfer of stock by the judgment debtor to his wife set aside.

2. *Effect of sworn answer to amended bill which originally waived oath to answer.*—Where an original bill, divided into sections, as to each of which the oath of defendants was waived, is amended by interlineation, without the introduction of new matter, but for the purpose of making the previous averments clearer, after defendants had in their answer set up matters of defense not strictly responsive, and such as they were bound to prove without verification, because of the waiver in the original bill, they can not, in answering the amendments, set up the same defensive matters found in their original answer, and, because of the failure to affix foot-note to the original bill as so amended make oath to the answer and claim privileges for it as evidence, such as is accorded in equity practice.

3. *Presumption of gift from wife to husband arising from permissive use of proceeds of her property* —Where a wife permits her husband to retain the proceeds of sales of timber cut from lands belonging to her equitable separate estate, without requiring from him an express promise to account, a presumption arises, as between her and her husband's creditors, that they constituted a gift from her to him.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. W. H. TAYLOE.

The bill in this case was filed on October 4, 1892, by the appellee, Daniel E. Smith, as trustee under the will of Frank Conlon, deceased, against the appellants, John M. Ladd, Martha M. Ladd, his wife and the People's Bank of Mobile, a corporation under the laws of Alabama.

The complainant averred in his bill, that in his capacity as trustee, he recovered judgment against John M. Ladd on May 22, 1891, for $5,000, execution upon which was issued and returned no property found; that a certified transcript of said judgment was filed in the office of the probate judge on April 7, 1892; that at the time of the recovery of said judgment, John M. Ladd was the owner of 13 shares of stock in the Peoples' Bank of Mobile, said shares standing in his name on the books of said company; that notwithstanding the lien on the property of said John M. Ladd acquired by the filing by complainant of a certified copy of the judgment recovered against said Ladd in the office of the ju !ge of probate, which filing was notice to all the world of such lien, the said John M. Ladd made a transfer of said 13 shares of

said stock to his wife, Martha M. Ladd, and despite the notice the People's Bank entered such transfer on their books with the intention to prevent the complainant from applying such stock, by process of execution, to the satisfaction of his judgment. It was further averred in said bill that such transfer of stock was a voluntary gift from the said John M. Ladd to his wife, Martha M. Ladd, and was a mere gratuity to said wife, made without any valuable or adequate consideration; and that said transfer was made with the intent to hinder, delay and defraud complainant, and that said Martha M. Ladd and the Peoples' Bank had full notice and knowledge of the lien acquired by the complainant, and also of the intention with which said transfer was made and accepted, viz.: for the purpose of shielding said property from execution of said judgment.

The prayer of the bill was that the transfer of said 13 shares of stock in the Peoples' Bank by said John M. Ladd to his wife, Martha M. Ladd, be set aside as fraudulent and void, and that the said stock be applied towards the payment of the judgment recovered by the complainant against John M. Ladd. The complainant demurred to the bill on the ground that it showed by its allegations that the complainant had a full, adequate and complete remedy at law. This demurrer was overruled.

The respondents, John M. Ladd and Martha M. Ladd, in their answer to the bill of complaint, denied that at the time of the rendition of the judgment in favor of the complainant, against John M. Ladd, he was the owner of 13 shares of stock in the Peoples' Bank, and they further averred in their answer that on the 18th day of May, 1891, John M. Ladd, who was indebted to his wife, Martha M. Ladd, had transferred to her on the books of the Peoples' Bank the 13 shares of stock which stood in the name of John M. Ladd on said books. It was further averred in the answer of the respondents that several years before the said transfer, on May 18th, 1891, the said John M. Ladd had delivered unto his wife, Martha M. Ladd, 12 shares of stock in the Peoples' Bank, but these shares had never been transferred to her until on the day above mentioned. It was also averred in the answer that the indebtedness from John M. Ladd to his wife was as follows: In 1865, John M. Ladd was the owner of several thousand acres of timber-

ed land ; and not being in debt, he conveyed by deed duly executed and acknowledged, over six thousand acres of land to his wife, Martha M. Ladd on a recited consideration of love and affection ; that since that time he had cut timber from the lands so conveyed, and had marketed it, appropriating the proceeds to his own individual uses and purposes, and to the support of his family ; that during all of that time he had never accounted to his wife for the proceeds from the timber so cut, and at the date of the transfer of said stock he was indebted to her in at least $7,000, and that the stock was so transferred as part payment of such indebtedness.

After the filing of this answer, the complainant amended his bill by making fuller averments as to the recovery of the judgment, and in other ways, which are shown in the opinion. There was no foot-note attached to the amendments so made, and the respondents in making their answer verified the same under oath. In this answer they averred practically the same facts as were alleged in their original answers. After the filing of this answer, the complainant moved the court to allow him to amend his amended bill of complaint by adding at the foot of said amended bill a foot-note, stating that the respondents were not required to answer under oath, such answer being expressly waived. The respondents objected to the amendments on the ground that they had already answered the amended bill under oath, such oath not being waived in the amendment. The court denied the motion of the complainant.

The evidence on the part of the complainant showed the recovery of the judgment against John M. Ladd and the transfer of the 13 shares of stock in the Peoples' Bank by John M. Ladd to his co-respondent Martha M. Ladd. The evidence for the respondents tended to corroborate the averments of their answer ; and it was show thereby that the lands which were conveyed by John M. Ladd in 1865 to Martha M. Ladd were principally valuable for the timber that was on them ; that from 1853 to 1865, and from the latter date up to the filing of the bill, he had continued to cut timber therefrom, and had used the proceedes from the sale of said timber for his own purposes, and in support of his family ; that there had never been a statement of account between himself and his wife as to the amount of timber

cut from the property, and that he was unable to make an itemized statement of the amount for which he was indebted to his wife, but that it was about $7,000, which estimate was formed by counting the stumps from which the trees had been cut. Such other facts of the case, are as necessary for the present appeal, are sufficiently stated in the opinion.

On the final submission of the cause, on the pleadings and proof, the chancellor decreed that the complainant was entitled to the relief prayed for. The respondents appeal from this decree, and assign as error the interlocutory decree of the chancellor overruling the demurrer to the bill, and the final decree granting the relief prayed for.

OVERALL, BESTOR & GRAY, for the appellants.—The defendants demurred to the bill on the ground that complainant on the allegations of his bill had a full, complete and adequate remedy at law. The court overruled the demurrer.

No discovery is prayed for in the bill and the only allegation stating a reason for coming into this court is that complainant is not able to give the sheriff an indemnifying bond to get him to levy on the stock by an execution. This is no ground of equitable jurisdiction.

On the allegations of the bill the complainant could levy on the stock and try the right of property with Mrs. Ladd. If Ladd made a gift to his wife of the stock in fraud of existing creditors a court of law could condemn it to the execution founded on a cause of action long anterior to the alleged gift.—*Youngblood v. Youngblood*, 54 Ala. 489, 34 Ala. 643; 28 Ala. 160; 20 Ala. 390; 1 Brick. p. 639, section 3.

The chancellor erred in holding in his final decree that no foot note was required to the amended bill, the original and amended bill being divided into sections, thereby treating the oath of defendants to the amended bill as waived, after denying the motion to amend at the hearing.—*Winter v. Quarles*, Admr., 43 Ala. 692; *Alabama Warehouse v. Jones*, 62 Ala. 554; *County of Dallas v. Timberlake*, 54 Ala. 403; *Wilkerson Admr. v. Bradley*, 54 Ala. 677; *Taunton v. McNish*, 46 Ala. 617; *Agnew v. McGill*, 96 Ala. 498.

Complainant on the 19th of March, 1894, amended his

bill, which amendment contained four distinct sections and were quite lengthy. Said amendment contained no foot note waiving the oath. On the 28th of March, 1894, the defendants answered the bill under oath.

The law seems to be that oath may be required to parts of a bill and waived as to other parts, and from a portion of the defendants and waived as to the other defendants, and that oath may be required to answers to amendments although waived in the original bill. And when the oath is not expressly waived, then an answer under oath is required.

At the hearing the court overruled the motion to add the foot note, but on final decree decided that the foot note to the amendment was not necessary as the oath was waived in the Original Bill. The effect of this ruling is the same as if he had allowed the amendment. He treats the sworn answers as if not sworn to, and in that deprives the defendants of their effect as evidence. This is error. The answers fully deny the allegation of the bill as to the ownership of the stock at the dates named and shows who had the title, and these facts are uncontroverted and in connection with the other evidence shows that the stock is not liable to complainant's debt. *Agnew v. McGill*, 96 Ala. 496.

The timber on the land under the evidence in this case, is a part of the realty and constitutes the *corpus* of the property and is distinguishable from the rents, income and profits in the meaning of the principle of law ruled on in the following cases—*Newlin, et al. v. McAfee*, 64 Ala. 356-367; *Gordan, Rankin & Co. v. Tweedy*, 71 Ala. 213; *Allen v. Terry*, 73 Ala. 124; *Roper v. Roper*, 29 Ala. 247.

The principle that a wife can by her assent express or implied give to the husband the "*rents, income and profits*" of her separate equitable estate has been too long settled law in this State to be now controverted. But this principle has not been and should not be extended beyond the *rents, income and profits*, of such estate as those terms are commonly understood.

The word profits is to be construed in the same general sense as "rents and income," they are all coupled together, and are in fact synonymous, They mean the issues or increase out of the body or principal thing, and not the thing itself. In the language of Zell in his En-

cyclopedia, "Profit," from *pro* and *facio* to make, increase, growth, improvement and accession from labor or exertion, the advance in the price of goods beyond the cost of purchase," &c.

Webster's definition is substantially the same thing.— see also 94 U. S. 503.

It is a self evident proposition that the *assets or capital* of equitable estate is the combination of the land and timber as they exist in their natural state—these combined constitute the *corpus* thereof! Can any act of the husband change the character of the property or convert the "*corpus*" into "*rents, incomes or profits?*" The labor and expense in cutting and marketing timber may add to the value, but does not and cannot change *corpus* into profits.—*Dean v. Dean,* 54 Wis , 33.

In the *McAfee Case,* in 64 Ala. 367, which the chancellor relies on, what is the court speaking of as such rents and profits? It is the hire of slaves of the wife's equitable estate.

And in the *Tweedy Case,* in 71 Ala. 202, where the same principle is involved, it is the interest on money of such estate.

And in the *Terry Case* 73 Ala. 33, it is the rent of the wife's equitable estate.

They are all cases of profits or issues arising out of the body of the property and constitute no part of the *corpus* itself. But this principle cannot be applied to property situated as this is, and this court never intended to give it any such application.

The case in 64 Ala. relied on by the Chancellor, has no application at this time to this case, as this entire principle has been changed by the married woman's law of 1887, both as to right and remedy.

Mrs, Ladd is the owner of the real property, and the land includes any ground, soil or earth whatsoever, as meadows, pastures, woods, waters, marshes, burges and heath.—Angel on Water Courses, page 8.

The growing timber on land is certainly a part of the soil and is a corporeal hereditament and the right to remove it a corporeal right.—1. Greenleaf's Ed. Cruises, Dig., p. 37; Angel on Water Courses, 7 Ed., p. 7; *McGregor v. Brown,* 10 N. Y. 117. Growing trees are a part of the realty.—*Heflin v. Bingham,* 56 Ala. 574 and cases there

cited; *Magnetic Ore Co. v. Marbury Lumber Co.*, 16 Southern Reporter, p. 632.

Under the statute of 1887 the wife could sue the husband for the value of the timber cut on her land whether it was cut before or after the statute was passed—*Bruce v. Bruce*, 95 Ala. 565; *Memphis & Charleston R. R. Co. v. Bynum*, 92 Ala. 337; *Schlapbach v. Long*, 90 Ala. 527.

Under this statute as construed by these and other cases we understand that rents, incomes and profits of these lands belonged to Mrs. Ladd, and whether her husband had taken them lawfully or unlawfully, with or without assent makes no difference. And it makes no difference whether he had a contract with her to cut the timber and pay for it before the cutting, or ratified it after cutting.

By the statute Mrs. Ladd is invested with the control and management of this estate and is entitled to the rents, income and profits and may contract with her husband in reference thereto. Having converted her statutory estate to his use he had the right to pay her.

THOMAS H. SMITH, for the appellee.—Demurrers were incorporated in the answers of John M. and Martha Ladd to the bill. It was simply the bill of a creditor to set aside a fraudulent conveyance. The demurrers were properly overruled. Code of 1886, section 1735; *Betts v. Nichols*, 84 Ala. 278.

There was a foot note to the original bill in which answer under oath was waived. After answer complainants filed an amendment to the complaint. These amendments in nowise change the character of the bill, but merely stated the debt with more detail than in the original bill, such as stating the date when the decree was rendered against Lyles, date of execution against him and its return, and date when suit was commenced against Ladd, all of which were mere details but did not add any new features to the bill. The prayer of the bill was not amended. None of the allegations in any wise varied the material features of the original bill. No answer was required by a foot note to the amended sections. An answer to the original bill covered every allegation in the amendment. It was such an amendment as under the repeated rulings of the Supreme Court did not require a separate foot note.

In his rulings on this matter the Chancellor committed no error of which defendant's can complain.—*Alabama Warehouse Co. v. Jones*, 62 Ala. 550.

Had he ruled that a foot note was necessary complainants would have had a right to amend.—*Winter et als. v. Quarles Admr.*, 43 Ala. 697.

In suits by a judgment creditor to reach property fraudulenty conveyed, section 3547 as amended by the Acts of 1888-89; p. 87, power is given to Chancery Courts to make all orders or decrees necessary to reach and subject property, money or effects to its decree.

A husband is under no duty to account to the wife for the rents incomes and profits of his wife's equitable separate estate. They do not constitute a valuable consideration, but even if he were accountable the evidence has not distinguished what part of the cutting was done before the present married woman's law changed the old laws as to relations of husband and wife, nor does the proof show what part of the cutting was done after the deed of 1865 and between 1865 and 1853, but does show that cutting was going on during all those periods. *Early v. Owen*, 68 Ala. 171.

There was no dissent by the wife from the husband's cutting. She knew of it all the time, concurred in and allowed her husband to continue to do so for a period of twenty-six years from 1865 until the bringing of the suit against him, 1891. The answer and proofs fail to show a bona fide existing indebtedness such as will support the transfer.

This case comes within the rule in the case of *Newlin v. McAfee*, 64 Ala. 357.

The entire defense has been based upon a contention that the husband owed Martha M. Ladd a debt for timber cut from her lands. If the timber was not rents income and profit, then it must have been of the *corpus* of the estate. Such is defendants' contention.

This does not entitle them to claim a debt. If it be true that it is a part of the estate, then any debt would be due not to Martha M. Ladd, who had merely the interest of a life tenant in the lands with remainder over to the children of her marriage with John M. Ladd. The defendant has selected the wrong person to claim as his creditor.

A tenant for life has no authority to commit waste.

[Ladd *et al.* v. Smith, Trustee &c.]

6 American and Eng. Encyc. of Law, p. 883.
The right of action in such cases lies in the remainder-men not in the tenant for life.—*Searles v. Searles*, 7 N. Y. Chy. Reports, 972. Also, reported in 3 Sanf. Ch., 601.

HARALSON, J.—1, The demurrer to the bill was properly overruled. The complainant was a judgment creditor, with an execution, issued thereon, returned no property found; and besides, it is shown, that the judgment having been rendered against the defendant in his favor, on the 22 May, 1891, was duly recorded in the probate office of Mobile county, on the 7th April, 1892. As such judgment creditor, he had an election to proceed by bill in equity to have the alleged fraudulent conveyance and transfer of said stock set aside, for the purpose of making his lien effectual.—Code, § 1735; *Evans v. Welch*, 63 Ala. 250; *Lehman v. Meyer*, 67 Ala. 396; *Betts v. Nichols*, 84 Ala. 278; *Marble City Land Co. v. Golden*, 17 So. Rep. 935; *Raisin Fertilizer Co. v. Bell*, 18 So. Rep. 168.

2. The chancellor committed no error of which defendants can complain, in holding that under the circumstances in this case, a foot-note to the amended bill was not necessary. In the *Alabama Warehouse Co. v. Jones*, 62 Ala. 550, it was held, that under our practice (Rule 42 Chancery Pr.) amendments may be made by simply striking out facts of a bill or answer, by interlineation or erasure, when of a brief character, the essential thing being, that the amendment must be made in such manner, that it may be ascertained in what it consists; that where new matter was embraced in a single paragraph, a foot-note requiring an answer to it was unnecessary, and that such note is necessary, when the bill is divided into sections, and numbered, and a defendant has a right to know which of these he is required to answer.

In the case before us, the original bill was divided into five short sections, and the oath of defendants was waived as to each. The amendments proposed to the 2d and 4th, consisted of interlineations of a brief character, introducing no new matter, but making clearer averments already in the bill. The amendment to the first section, was to make that section fuller in the de-

scription of the judgment the bill was filed to enforce, in stating the cause of action on which it was founded and when it arose; and the one allowed to the third paragraph, was a fuller specification of the ownership by the defendant, John M. Ladd, of the thirteen shares of stock in the bank, which the bill seeks to reach as having been transferred in fraud of complainant, by stating the dates at which he was the *bona fide* owner of them. The amendments were perhaps unnecessary, but were added by way of caution, for a clearer statement of matters already averred. The defendants had already answered the original bill, and as to the matters of these amendments, had made responses in substance the same as repeated in the answers to the amendments. In the original bill, defendants set up matters of defense to the bill not strictly responsive, and such as under the rules of pleading they were bound to prove, and being relieved from making answers under oath, these answers were not verified. Because of the absence of a foot-note to the amendments which were filed, waiving oath, the defendants set up in their answers to the amendments, these same defensive matters set up in the original answers, and making oaths to them, claim the privilege for them as evidence, such as is accorded in equity practice, when sworn answers are required. This claim, under the circumstances just stated is untenable.

3. We need not enter into any extended discussion of the question whether the proceeds of the sales of timber cut from the lands of the wife by the husband, constitute a part of the *profits* of the land, according to the strict definition of that term. It is conceded, that growing trees are, generally, a part of the land. Where one owns lands mainly unfit, as here, for any other purpose, than for the timbers that grow upon them, it would be a narrow construction of the word, profits, to say, that the cutting, removal and sale of such timbers did not constitute profits arising from the lands. "In the law of real property, 'profit' is used in a special sense to denote a produce or part of the soil or land. Therefore, 'if a man seized of lands in fee by his deed granteth to another the profit of those lands, to have and to hold to him and his heires, and maketh livery *secundum formum chartae*, the whole land itself doth pass: for what is the land but the profits thereof,

[Ladd et al. v. Smith, Trustee &c.]

for thereby vesture, herbage, trees, mines and all what-soever parcell of that land doth pass.' (Co. Litt. 4b.)" Rapalje & Lawrence Law Dic. 1020, title, *Profit.* Profits *a préndre*, are rights of taking the produce or part of the soil from the land of another person.—2 Bouv. Law Dic. 472; 19 Am. & Eng. Ency. of Law, 260.

The deed from defendant, J. M. Ladd, to his wife, the defendant, Martha M. Ladd, of date 14th Jan'y 1865, to the lands off which trees were cut and appropriated by J. M. Ladd, was a conveyance, directly to her by him, of said lands. Under the decisions of this court in construction of the married woman's law of that time, the estate she acquired in said lands was her equitable separate estate.—3 Brick. Dig. p. p. 543-4, §§ 23, 27, 28.

In respect to the rents and profits of her equitable separate estate, it was held that the wife might prevent her husband from receiving them. As was said in *Newlin v. McAfee*, 64 Ala. 367, "By her express dissent, or by express agreement with him, she may render him liable to account for them. But, if she does not dissent nor require an express promise from him to account, the presumption of a gift must prevail. When a controversy arises between the wife and the creditor of the husband, especially after the lapse of many years, while the husband may have been engaged in mercantile pursuits, in the course of which credit may have been extended to him on the faith of the presumption, the proof to repel it should be clear and convincing,"—*Allen v. Terry*, 73 Ala. 123; *Allen v. Allen*, 80 Ala. 180.

The proofs, as furnished by defendants themselves, show, that these lands had been used by the husband since 1853, for the purpose of cutting and selling the timber from them; that this continued after their voluntary conveyance to her in 1865, just as it had done before; that he kept no account of the trees cut and knows how many and their value, only, by counting the stumps; that he had no other source of income and apppropriated the money to his own uses and to the support of his family, how much in either direction he had no means of ascertaining; that he never gave to his wife any proceeds arising from the sale of the trees, or made any settlement or accounting with her for them; that his wife never, in so many words, made a direct demand on him

for payment, but many times stated to him that he was in debt to her for the timber so cut off of her lands, and he always bore it in mind to pay her in installments as he might be able.

After reviewing the evidence, the chancellor in a well considered opinion, which we approve, says, "The husband shows in answer to the first cross-interrogatory to him that the wife never, in so many words, made a direct demand of payment from him, but many times stated to him that he was indebted to her for the timber cut off of her lands. But she does not show that she insisted that he should stop cutting or pay up, or that he was ever stopped, or promised to pay her for such cutting. It is clear that she knew of such cutting and assented to it. It is also clear, that even if he did bear in mind to pay her, he did not bear in mind to consider it a debt until he was pressed by suit. Until then, no stumps were counted, and now, all, old and new are counted against his just obligations. The perusal of the testimony but convinces me, that there is, and has been no debt between these parties, that the wife can, in equity and good conscience, be allowed to collect. For this reason I hold the transfer of this stock invalid as to complainant."

Of the transfer of this stock he says, "There is some attempt to aver and prove that Mrs. Ladd had owned such shares for several years prior to such date; (the 18th May, 1891, when they were formally transferred to her on the books of the bank), but, no candid reader of Ladd's testimony can believe that such was the case. Prior to that date, there may have floated about in the brain of Ladd and his wife, the idea that he ought to give her said stock, or pay it to her on account of what he might have owed her for her timber. But such thought did not ripen into action before said date, and then only when it was quickened into life for fear of the result of the pending action."

4. At this point, the learned chancellor might have closed his opinion, with a decree for complainant; but, he pursues the case by a discussion of the evidence in the cause, and concludes that the transfer of the stock was without consideration, fraudulent and void as against complainant. It is unnecessary for us to go over the same grounds he did, to arrive at the same conclu-

sion. We are not satisfied that he erred in his finding on the facts, and must approve it. One thing is worthy of further remark in this connection, that on the same day said Ladd transferred this stock to his wife, on the books of the bank,—the 18th May, 1891,—he conveyed sub-stantially all his other property to his two sons and one Clarke, taking their joint notes for the same, and thereby, in both transactions, stripped himself of all he had, liable to execution.

5. It is unnecessary to decide, as the chancellor de-clined to do, whether rents and profits of the wife's statutory estate, under the present Code, which is not equitable, may not be given to the husband, as she might have given them to him under the law existing before the Act of 1887. The defendants have not shown how many trees were cut and their value, before the passage of that Act, and how many and their value since. The evidence tends to show, that the cutting has gone on yearly, since 1853, to the date of the filing of the bill, still no data is given to ascertain how much has been cut during and since the year 1887. The nearest approach to making the proof is, that said Jno. M. Ladd testified, he had cut altogether about $7,000 worth of cypress from said lands, and about five or six thousand dollars of it, in the last ten or twelve years. He had been cutting about forty years, and if in that time he cut $7,000, it strikes one that more was cut in the first thirty and less in the last ten years, than the witness here estimates. And besides, there is nothing to indi-cate, that his stock was taken to pay a debt originating since that time, but the claim is, that it was for a debt beginning and accruing yearly, since 1865. The evi-dence at this point, as we have stated, is too vague and uncertain on which to base reliable judgment. If we were to hold that Ladd owed his wife for trees cut off her land since the passage of the married woman's law, in 1887, an amount equal to the value of the stock trans-ferred to her, or any other amount, it would be the re-sult of inference, without sufficient evidence to sustain it, rather than of satisfactory proof. The decree must be affirmed.

Affirmed.