[No. 2071-2.   Division Two.   January 11, 1977.]

GEORGE E. LAYMAN, ET AL, *Respondents*, v. J. L. LEDGETT, ET AL, *Appellants*.

*Barry J. Dahl* and *Walstead, Mertsching, Husemoen, Donaldson & Barlow,* for appellants.

*John Moore, Velikanje, Moore & Shore, John Gavin,* and *Gavin, Robinson, Kendrick, Redman & Mays,* for respondents.

PETRIE, C.J.—Plaintiffs and defendant each claim ownership of and the right to cut and harvest all timber on a quarter section of land in Klickitat County. Plaintiffs, George, James, and Edmond Layman, claim their right by a quitclaim deed from their father, D. M. Layman, which purported to convey all the timber in the tract "in perpetuity with necessary easements for the enjoyment of the rights hereby granted forever." Defendant, J. L. Ledgett, claims his right by Klickitat County treasurer's deed which purported to convey the "land only."

In 1933, D. M. Layman purchased the southeast quarter of Section 34, Township 6 North, Range 15 E.W.M. By instrument entitled "Timber Deed" dated March 15, 1934,

D. M. Layman conveyed to his brother, Lawrence Layman, "all of the timber standing and growing upon" the tract

together with the right of ingress and egress upon, to or from said land for the said Lawrence M. Layman, his agents, employees, teams and appliances, for the purpose of cutting and removing said timber, together with the exclusive right at any time thereafter to build, maintain or operate in or upon said land any train, railroad or other contrivance for the purposes of transporting timber from any of the said land, *all up to the 15th day of March, 1974.*

*The said grantees* agree that all slashings upon said land shall be burned in accordance with the laws of the state of Washington; and, *further agree, that any rights thereunder shall cease on the 15th day of March, 1974, and that any timber not so removed on said date shall belong to the said grantors.*

(Italics ours.)

Thereafter, pursuant to statute, the county assessor segregated the property into "land only" and "timber" for tax purposes and kept separate records for payment of property taxes. Taxes on the "timber" were paid in due course, but taxes on the "land only" became delinquent. In 1942 Klickitat County acquired the "land only" through tax foreclosure proceedings. In 1955, defendant, J. L. Ledgett, acquired the "land only" from Klickitat County by a treasurer's deed.

In the interim, in 1949, Lawrence Layman conveyed back to his brother, D. M. Layman, all his "right, title and interest" in the "timber." On December 23, 1967, D. M. Layman quitclaimed the "timber" in perpetuity to his three sons, the plaintiffs herein.

Some time after March 15, 1974, Ledgett started to cut and remove timber on the quarter section of land. Plaintiffs sought an injunction and recovery of damages sustained by reason of Ledgett's removal efforts. The trial court determined that the Layman brothers owned the timber, granted the injunction, and awarded damages for Ledgett's conversion of the Layman brothers' timber. Ledgett appealed to this court. We reverse, dissolve the injunction, and remand

the cause with direction to entertain evidence (previously reserved) of Ledgett's damages resulting from this action.

█ Resolution of the essential issue presented by this appeal requires that we examine in some detail the nature of the deed which D. M. Layman delivered to his brother in 1934. It seems apparent that he gave his brother a temporary right—albeit for 40 years—to enter, cut, and remove all of the standing timber on the land. That grant of the temporary right constituted a conveyance of an interest in land.[1] *Coleman v. Layman*, 41 Wn.2d 753, 252 P.2d 244 (1953). In *Coleman*, the court interpreted a deed which conveyed the timber growing on a certain tract and which gave the grantee the right to enter, cut, and remove it for 20 years from the date of the deed or at any earlier date that it was cut and removed. The deed continued:

> and in either event, all timber then remaining thereon, is to revert to and become the property of the first parties, [grantors] their heirs or assigns, and all rights granted to second party [grantee] hereunder shall cease and terminate, . . .

*Coleman v. Layman, supra* at 755.

The court specifically declined to identify either the exact nature of the "estate" which the deed gave to the grantees or the legal mechanism by which the grantees might subsequently be deprived of that "estate."[2] However, the court did assert:

---

[1] We are not called upon to interpret RCW 62A.2-107(1) which provides:

> *A contract for the sale of timber*, minerals or the like or a structure or its materials to be removed from realty *is a contract for the sale of goods* within this Article *if they are to be severed by the seller* but until severance a purported present sale thereof which is not effective as a transfer of an interest in land is effective only as a contract to sell.

(Italics ours.)

Obviously, this statutory provision does not apply to the instrument in the case at bench because (1) the deed preceded the statute, and (2) the timber was not "to be severed by the seller." *See Clarke v. Alstores Realty Corp.*, 11 Wn. App. 942, 527 P.2d 698 (1974); *Bremmeyer v. Peter Kiewit Sons Co.*, 16 Wn. App. 318, 555 P.2d 1183 (1976).

[2] The use of the word "estate" appears to offend strict real property orthodoxy. *See* Johnson, *Washington Timber Deeds and Contracts,* **32**

Any estate in the timber passing to defendants by the deed is determinable, and the possibility of reverter or the reversionary interest in plaintiffs depends upon two events, (1) the failure of defendants to cut and remove the timber within twenty years from the date of the deed, or (2) its earlier cutting and removal (a special limitation or condition precedent to the reversion before twenty years).

*Coleman v. Layman, supra* at 757.

Further, in *Elmonte Inv. Co. v. Schafer Bros. Logging Co.*, 192 Wash. 1, 72 P.2d 311 (1937), the court interpreted a timber deed substantially similar in nature to the deed in the case at bench. *Elmonte* holds that when growing timber is sold with a fixed time for its removal, the land owner may not, after he mortgages the land, extend the time allowed for the removal of the timber without the permission of the mortgagee. The essential reasoning of the court was that the timber in controversy, not having been severed on the date the mortgage was executed, remained as real property (was not constructively severed) on the date the mortgage was given, and, having retained its status as part of the land, it was part of the land mortgaged.

To the same extent, the timber in the case at bench, not having been "severed" in 1942, the date Klickitat County acquired the "land only" by foreclosure proceedings, remained as part of the realty ultimately conveyed to defendant, J. L. Ledgett.

Accordingly, in 1949, when Lawrence Layman purported to convey the timber back to his brother, D. M. Layman, he owned only the right to continue to cut and remove the timber in the controversial quarter section of land for the balance of the 40-year period ending in 1974. Either the timber conveyed to Lawrence in 1934 had been cut and removed by the date of the foreclosure proceedings in 1942 or, if still standing on that latter date, it passed to Klickitat

Wash. L. Rev. 30, 37 (1957); Luccock, *Timber Deeds—A Case for the Restatement of the Law of Property*, 20 Wash. L. Rev. 199 *et seq.* (1945); Note and Comment, 34 Ore. L. Rev. 256 (1955).

County as part of the land. Thus, in 1967, D. M. Layman owned neither timber nor land in the controversial quarter section. Rather, in 1949 he simply acquired his brother's right to cut and remove the timber. His 1967 quitclaim deed purporting to convey the timber to his three sons in perpetuity could not grant to them any greater interest than he had in the property.

By the same logic, on March 15, 1974, all right to cut and remove the timber—the Layman brothers' interest in the land—ceased to exist. We learn from *Elmonte Inv. Co. v. Schafer Bros. Logging Co.*, *supra*, and *Coleman v. Layman*, *supra*, that on March 15, 1974, the grantee's determinable "estate" in the timber ceased. Either the grantee's interest in the timber reverted to the then owner of the land, or the then land owner's contingent reversionary interest[3] in the timber became vested in 1974.

The primary contention of the Layman brothers, however, is that D. M. Layman's 1934 deed to his brother passed "title" to the timber to the grantee upon execution of the deed, with the grantor retaining only a reversionary right, citing *Heybrook v. Beard*, 75 Wash. 646, 135 P. 626 (1913). In addition, the brothers contend, such a grant effectively converted the timber into personal property, citing *Leuthold v. Davis*, 56 Wn.2d 710, 355 P.2d 6 (1960). Thus, they conclude, Klickitat County acquired no interest in the timber when it foreclosed on the "land only" in 1942.

We respond first to the contention that D. M. Layman's 1934 deed converted the standing timber into personal property. *Leuthold v. Davis*, *supra*, simply reiterated the rule that if a deed *clearly manifests an intention*[4] that the sale or reservation of timber is *in perpetuity*, then the

---

[3]*See Wasser & Winters Co. v. Jefferson County*, 84 Wn.2d 597, 528 P.2d 471 (1974) for the suggestion that the owner of the land, prior to the lapse of time for cutting, has a "contingent reversionary interest" in the timber.

[4]*See Franke v. Welch*, 254 Ore. 149, 458 P.2d 441 (1969) for a discussion of the reasons why "a very clearly manifested" intention is necessary to grant a timber right in perpetuity. *See also Nelson v. McKinney*, 163 Wash. 529, 1 P.2d 876 (1931) for a discussion of criteria necessary to create a grant of timber rights in perpetuity.

party who purchases or reserves the timber by such a deed has a perpetual right to remove it. *See Johnson v. Layman,* 1 Wn. App. 909, 465 P.2d 196 (1970). Under those limited circumstances, the timber is said to be constructively severed from the land and title to the timber is conveyed or reserved distinct from the land and becomes personal property separate from the land. In the case at bench, however, a completely different intent is manifested in the deed. We have no difficulty concluding that in 1934 D. M. Layman did not convey a right in perpetuity to his brother to cut the timber; neither did he convey the land, reserving to himself the right in perpetuity to cut and remove the timber.

Discussion of the question of "title" to standing timber, the cutting rights to which have been granted to another for either a specified or reasonable period of time, can degenerate into a meaningless exposition unless the full significance of the transaction is placed in proper perspective. One clearly enunciated view analyzes the problem as follows:

> The division in ownership which takes place upon the conveyance is a division in the incidents or rights attendant upon ownership of an estate in fee simple in the land whereby the owner of all such incidents or rights relating to the land severs the ownership of the particular right to cut and remove the trees and grants that right away. What is thus granted and so what passes into new ownership is the right, for a limited period of time, but which the grantor could exercise without time limit, to cut and carry the timber away. All that passes to the timber grantee is this right; he has title to this right; but, until severed, the trees remain part of the land and the estate of the grantor in the land in terms of the totality of all his rights therein is diminished only to the extent that this granted right of removal remains to be exercised. The land owner has not parted with any segment of his estate in the land; he has merely parted with the right to appropriate part of the land by severance, with the consequence that upon such appropriation the physical substance of his estate will be so far diminished. The owner of the right to cut and remove the timber, the

so-called timber owner, on the other hand, can translate his ownership of his right into ownership of the timber severed from the land, *i.e.*, convert an interest in land to an interest in personalty; but when his cutting operations cease, or if he fails to exercise his right within the time allowed, he loses, not the timber but the right to acquire a property therein by severance.

(Footnotes omitted.) Luccock, *Timber Deeds—A Case for the Restatement of the Law of Property*, 20 Wash. L. Rev. 199, 206-07 (1945).

Once the foregoing analysis is recognized and applied to the facts in the case at bench, resolution of the basic issue of law is dramatically simplified. There need be no recourse to expressions such as "possibility of reverter" or "contingency reversionary interest," with the implication that somehow "title" changed from one party to another upon the happening or failure of a particular event.

In 1934, D. M. Layman, owner of the estate in fee simple, severed from that fee simple estate the ownership of the particular right to cut and remove the trees and granted that right to his brother for 40 years. In 1942, by the tax foreclosure proceedings, Klickitat County acquired D. M. Layman's estate in fee simple as diminished by the right which Layman had granted to his brother. That estate was subsequently conveyed to J. L. Ledgett. In 1949, when Layman's brother, the so-called timber owner, reconveyed all his "right, title and interest" in the timber to D. M. Layman, he reconveyed all his "title" to the 40-year right to cut and remove the standing timber, and consequently he returned to D. M. Layman the right to translate the ownership of the "cut and remove" right into ownership of the timber severed from the land. In 1967, D. M. Layman could convey no more to his sons than the remaining portion of that 40-year right to "cut and remove" together with the consequential right to translate that right into ownership of the timber before March 15, 1974. On that date, because the timber was still standing, the sons lost not the timber but the right to acquire ownership thereof by severance.

We find no inconsistency between the foregoing analysis

740

and the significant holding of the court in *Heybrook v. Beard,* 75 Wash. 646, 135 P. 626 (1913).

Judgment is reversed, the injunction is dissolved, and this cause is remanded with direction to entertain evidence, and determine the extent, of Ledgett's damages resulting from this action.

REED, J., and JOHNSON, J. Pro Tem., concur.

Petition for rehearing denied February 10, 1977.

Review granted by Supreme Court June 28, 1977.