[No. 44782.   En Banc.   April 13, 1978.]

GEORGE E. LAYMAN, ET AL, *Petitioners,* v. J. L.
LEDGETT, ET AL, *Respondents.*

*John S. Moore, Velikanje, Moore & Shore, John Gavin,* and *Gavin, Robinson, Kendrick, Redman & Mays,* for petitioners.

*Barry J. Dahl* and *Walstead, Mertsching, Husemoen, Donaldson & Barlow,* for respondents.

HOROWITZ, J.—This appeal concerns the nature and effect of a timber deed conveying cutting rights for a period of years. The question raised is to whom the uncut timber belongs after the expiration of the specified period when, prior to the expiration, the grantor failed to pay real property taxes on the land and the county foreclosed on "land only." During this time the grantee of the cutting rights paid taxes on his interest as required by law. The Court of Appeals held that upon expiration of the cutting rights period the uncut timber belonged to the current owner of the fee, purchaser from the county. We affirm for reasons stated herein.

In 1934 the fee owners, Douglas and Ethel Layman, conveyed "all the timber standing and growing" upon the land for a period of 40 years to Lawrence Layman. The purpose of the conveyance was the "cutting and removing [of] said timber." Any timber remaining on the land at the end of 40 years, the conveyance provided, "shall belong to the said grantors." The timber was segregated from the land for tax purposes at that time, and throughout the 40–year period taxes on the timber were paid. In 1949 Lawrence conveyed all of his interest in the cutting rights back to Douglas and Ethel, who subsequently conveyed these same rights to their sons in 1967. The sons, George, James and Edmond Layman are petitioners here.

Meanwhile Douglas and Ethel Layman failed to pay the taxes assessed against the land and in 1942 Klickitat County foreclosed on "land only." The Ledgetts, respondents here, purchased the land in 1946, obtaining a fulfillment deed from the county, which again described the property as "land only."

After the expiration of the 40–year cutting rights, in 1974, the Ledgetts began to remove timber from the property. The Laymans sought an injunction to prevent them from cutting and removing timber, and instituted this suit to quiet title on the timber.

Two basic questions are raised. First, did the 1934 timber deed sever the timber from the land in perpetuity? If so, our decision would be controlled by the holding of *Leuthold v. Davis*, 56 Wn.2d 710, 355 P.2d 6 (1960), that ownership of timber severed from the land in perpetuity is unaffected by tax foreclosure proceedings on the land. If the timber was not severed in perpetuity, to whom did it belong at the end of the 40–year period? Specifically, did the language of the deed providing that uncut timber "shall belong to said grantors" have any effect on the nature of the real property interest foreclosed by the county? The answer to that question requires an understanding of the nature of timber cutting rights and the development of the law in this state.

The Laymans contend the language of the 1934 timber deed, from which their rights·in the timber derive, is sufficient to sever the timber from the land in perpetuity. The deed created a perpetual reversionary interest in the grantor, it is argued, which passed to them through the 1967 quitclaim deed. The basis of this contention is the language in *Leuthold v. Davis, supra* at 713, describing timber severed by deed as personal property. Petitioners appear to extend this language to reason that any conveyance of timber cutting rights converts timber into personalty, and where the grantor retains a reversionary right the timber never again becomes a part of the fee. (Reply Brief for Respondent at 6.) We do not agree.

It may be that timber severed in perpetuity does become personalty. In *Leuthold v. Davis, supra,* a perpetual severance was found, and regarding such a severance we need not disturb the court's reasoning that the timber was converted into personalty. Where, however, the interest conveyed is cutting rights for a period of years or for a reasonable period, *Leuthold v. Davis, supra,* does not hold the grantee's interest is a perpetual personal property interest. Moreover, this aspect of the nature of the grantee's interest is not relevant to the question whether the timber deed severed the timber in perpetuity, for even if the grantee's temporary interest is described as personalty,[1] after the expiration of the period of cutting rights the uncut timber is realty, a part of the land. This is more fully discussed below. The question whether the deed severed the timber in perpetuity, then, does not depend on the characterization of the temporary cutting rights of the grantee. The question is simply whether the language of the deed was sufficient to sever the timber in perpetuity. Under the law of this state, and that prevailing elsewhere, it was not.

██ Where timber is conveyed without stipulating a time within which it must be removed, and where the clearly expressed intention of the parties is to create a sale in perpetuity, a deed may sever timber in perpetuity. *Leuthold v. Davis, supra.* The effect of such a conveyance has severe consequences for the ability of the landowner to use and enjoy his land. Thus "the law will not presume this to be the intent of the parties, unless the contract of sale clearly requires such a conclusion." *Hendrickson v. Lyons,* 121 Wash. 632, 637, 209 P. 1095 (1922). *See also* 2 Tiffany, *The Law of Real Property* § 597, at 537–38 (3d ed 1939); 1 Thompson, *Commentaries on the Modern Law of Real Property* § 116, at 164–65 (1939). Language which has been

---

[1]As it is, for example, for tax purposes. *See* RCW 84.04.080; *Wasser & Winters Co. v. Jefferson County,* 84 Wn.2d 597, 528 P.2d 471 (1974). We do not find this treatment an obstacle to the use of the profit a prendre approach described herein.

found adequate to express an intention to sever in perpetuity includes a description of the cutting rights as enduring "forever," as being "irrevocable," or as existing "at any time." *See Nelson v. McKinney,* 163 Wash. 529, 535, 1 P.2d 876 (1931). Significantly, severance in perpetuity is only found in cases where there is no specified limitation on the period of cutting rights of the grantee. In this case, however, the deed contained no language expressing an intention that the timber be sold forever. On the contrary, the grantors specified that the grantee was to enjoy cutting rights only for a period of 40 years. After that time the timber was to belong to the grantors. Thus the conditions necessary to create a severance in perpetuity have not been met.

If the timber deed did not sever the timber in perpetuity, then, what was the effect of the 1942 tax foreclosure on "land only?" The overwhelming weight of authority in this state and others is that, upon expiration of a limited term of cutting rights, the timber not removed is part of the land and belongs to the current owner of the fee. *Lehtonen v. Marysville Water & Power Co.,* 50 Wash. 359, 360, 97 P. 292 (1908). *Accord, United States v. Wheeler,* 161 F. Supp. 193 (W.D. Ark. 1958). *See also* 2 Tiffany, *The Law of Real Property* § 597, at 535 (3d ed. 1939); Johnson, *Washington Timber Deeds and Contracts,* 32 Wash. L. Rev. 30 (1957); Luccock, *Timber Deeds—A Case for the Restatement of the Law of Property,* 20 Wash. L. Rev. 199 (1945). Furthermore, prior to the expiration of limited cutting rights the interest in the timber retained by the grantor is a real property interest which, unless specifically excepted, is conveyed with any conveyance of the land. *Elmonte Inv. Co. v. Schafer Bros. Logging Co.,* 192 Wash. 1, 13, 72 P.2d 311 (1937). *Accord, Forbes v. Columbia Pulp & Paper Co.,* 340 So. 2d 734 (Miss. 1976); *Whittaker v. Thompson,* 53 Cal. 2d 192, 347 P.2d 7, 1 Cal. Rptr. 7 (1959); *Carroll v. Batson,* 196 N.C. 168, 145 S.E. 9 (1928); *Martin v. Southern Pine Lumber Co.,* 284 S.W. 918 (Tex. 1926); *International Lumber Co. v. Staude,* 144 Minn. 356, 175 N.W. 909

(1919). The reasoning of these cases is that the grantor of cutting rights retains a reversionary interest in the timber which is a part of his estate in the land. Subsequent conveyances of the real property estate thus include the reversionary right to cut and remove timber. *See Elmonte Inv. Co. v. Schafer Bros. Logging Co., supra* at 13.

The theoretical difficulties of a rationale using the notion of a reversion have been pointed out. *See* Luccock, *Timber Deeds—A Case for the Restatement of the Law of Property, supra.* A far more coherent approach, suggested by that author and others,[2] is to understand timber cutting rights as a profit a prendre, a right to take the profits of the land by entering onto it and cutting and removing the timber. *M. & I. Timber Co. v. Hope Silver–Lead Mines, Inc.,* 91 Idaho 638, 428 P.2d 955 (1967); *McLemore v. Knott Coal Corp.,* 203 Ky. 833, 263 S.W. 365 (1924); *Ladd v. Smith,* 107 Ala. 506, 18 So. 195 (1895). This right is an interest in real property to which the timber grantee has title. The grantor has parted only with his right to appropriate that part of his land, *i.e.,* timber, for a period of time; he has not parted with any part of his estate. The trees remain a part of the land until severed, at which time they are converted into personalty. Luccock, *Timber Deeds—A Case for the Restatement of the Law of Property, supra* at 207.

This approach is appealing for two reasons. First, it provides a coherent, consistent, and simple theoretical structure for understanding the nature of timber cutting rights. Under this analysis Douglas and Ethel Layman conveyed to Lawrence Layman the right to come on to the land, to cut and remove timber from it, for 40 years. They did not diminish their estate in the land; they parted only with one interest in it, *i.e.,* the right to cut and remove timber for the next 40 years. The timber as it grew continued to be a

---

[2]*See* Johnson, *Timber Deeds and Contracts,* 32 Wash. L. Rev. 30 (1957), especially page 38, footnote 33, in which other articles suggesting the *profit* concept are cited. The Court of Appeals also referred to the profit a prendre analysis in its opinion below. *Layman v. Ledgett,* 16 Wn. App. 733, 738, 558 P.2d 1378 (1977).

part of the land, and could have been converted into personalty by any person whose interest included the right to cut and remove it. Thus, the tax foreclosure proceedings on "land only" included that part of the grantors' estate in the land, which was their right to cut and remove timber after the 40 years.

It should be noted that the result in this case is the same no matter which approach we adopt. As discussed above, the overwhelming authority is that the grantors' interest in the timber during the 40–year period was a real property interest which remained a part of their estate in the land. As such it was conveyed by the tax foreclosure proceedings. Whether we describe the interest as a reversion, which is the more common characterization, or a *profit,* which is the more consistent and desirable theoretical approach, the result is still that Klickitat County acquired the right to cut and remove timber after the expiration of the 40–year period and could thus convey that right to the Ledgetts.

This result is reasonable. Although the land and timber were segregated for tax purposes, the theoretical severance of standing timber could have lasted only 40 years. Thus, the designation "land only" on county foreclosure documents can reasonably be assumed to refer to the fact that timber cutting rights were outstanding at that time, that taxes on those rights were not delinquent, and that they were therefore not foreclosed. The timber deed was recorded, and purchasers of the land from the county thus had notice of the duration of the cutting rights and the probability that timber would be removed before the expiration. Even if that were not the intended meaning of the designation, however, the county treasurer had no authority to sever the grantor's interest in the timber from the land in foreclosure proceedings. The treasurer was required by statute to issue certificates of delinquency on "any property" remaining on the tax rolls 5 years after the date of delinquency and to foreclose the tax liens embraced by the certificates. Laws of 1937, ch. 17, § 1, p. 43–44. As we have shown, the Laymans' "property" included the cutting rights

after the expiration of 40 years from the date of the timber deed.

The second reason the profit a prendre analysis is appealing is that it is supported by the reasoning of several important early decisions in this state, and does no violence to the results of cases adopting a different rationale. In *France v. Deep River Logging Co.,* 79 Wash. 336, 344, 140 P. 361 (1914) the court described cutting rights as the right "to enter upon the land and remove the timber." Describing the effect of the expiration of a period of cutting rights, the court in *Nelson v. McKinney, supra* at 533, said "the purchaser's right to the timber, together with his right to enter, cut and remove the same, ceases". In *Coleman v. Layman,* 41 Wn.2d 753, 756, 252 P.2d 244 (1953) the court described a timber deed as a conveyance of an interest in realty. We have already pointed out that cases in this state establish that, at least after expiration of a period of cutting rights, the uncut timber is realty. *Lehtonen v. Marysville Water & Power Co., supra* at 360.

The holding in *Heybrook v. Beard,* 75 Wash. 646, 135 P. 626 (1913), that the timber grantee was liable under the contract for the value of cut logs destroyed by fire before removal, was based on the court's reasoning that present title to the timber passed when the contract was executed. The profit a prendre analysis does not require a different result under the wording of that contract, because it is clear that title to the profit interest passes to the grantee immediately upon execution of the deed. That interest includes the exclusive right to take possession of the timber. We note, finally, RCW 62A.2–107 from the sales article of the U.C.C. treats as contracts for the sale of goods only those timber contracts in which the timber is to be severed by the seller.

The use of the profit a prendre analysis in drafting timber deeds would express more clearly the intent of the parties regarding the effect of the expiration of the period of cutting rights. In such a case there would be no need to create a reversionary interest, it being understood that the

right to enter upon the land, cut and remove the timber, simply expires and is replaced by the perpetual cutting rights of the owner of the fee. *See* Johnson, *Timber Deeds and Contracts, supra.* We note that modern forms do not attempt to create reversionary interests. *See* 6 Nichols, *Cyclopedia of Legal Forms Annotated* 6.266(C), at 253 (1975); 12 *American Jurisprudence Legal Forms* § 168:44, at 266 (2d ed. 1973); *Modern Legal Forms* § 3259, at 54 (1950). The *profit* approach is thus consistent with these documents.

With regard to those deeds, whether heretofore or hereafter executed and delivered, and which contain language of reversions, the effect of our holding is nonetheless identical. A deed purporting to create a reversionary interest in the timber in the grantor in fact retains in the grantor a real property interest which is a part of his estate in the land, and not a reversionary interest in personalty. As such it passes with any conveyance of the fee, including a conveyance under tax foreclosure proceedings. If the intent of the parties is to retain the cutting rights in the grantor as an individual without regard to subsequent conveyances of the fee, the deed must affirmatively so provide.

Affirmed.

HAMILTON, STAFFORD, UTTER, and DOLLIVER, JJ., concur.

HICKS, J. (dissenting)—"If the intent of the parties is to retain the cutting rights in the grantor as an individual without regard to subsequent conveyances of the fee, the deed must affirmatively so provide." So ends the majority opinion. Thus, the timber rights may be severed from the land if apt words are used.

In this instance, the majority decides that the words contained in the 1934 conveyance to Lawrence Layman, "The said grantees . . . further agree, that any rights thereunder shall cease on the 15th day of March, 1974, and that any timber not so removed on said date shall belong to said grantors," are not sufficient "to retain the cutting rights in

the grantor as an individual." Lawrence Layman quit-claimed his interest in the property back to D. M. Layman and wife in 1949, and the D. M. Laymans conveyed to their sons in 1967 by quitclaim deed.

By failing to give any content to the language in the 1934 conveyance, the court confers upon J. L. Ledgett and wife a windfall in excess of $100,000. In 1955, the Ledgetts acquired the "SE 1/4 (Land Only) of Section 34, Township 6 N., Range 15,' E.W.M., containing 160 acres, more or less" by a treasurer's deed from Klickitat County reciting a con-sideration of $160. Presumably, their taxes thereafter on "land only" were based on that value, for the taxes on the timber growing on the land had been and continued to be paid by the Laymans.

The Laymans paid the taxes, yet did not cut the timber prior to March 15, 1974. Obviously, they believed that the timber conveyances had been sufficient to reserve to them the right to remove the timber from the "land only". This court holds they were mistaken; after March 15, 1974, they have nothing, and the Ledgetts who began cutting the tim-ber on that date, have everything. That result does not appeal to me as being equitable, nor is it necessary in light of *Leuthold v. Davis,* 56 Wn.2d 710, 713, 355 P.2d 6 (1960). There, in a factual situation similar to this case, we held that a deed stating the grantor could remove timber "'at any time that shall be convenient'" separated the right of timber removal from the interest in the land until the tim-ber was cut.

In my view, the language in the 1934 conveyance suffi-ciently evidences the Laymans' intention to personally retain in themselves as grantors, "cutting rights", to use the majority's term. When the conveyance was recorded, the language therein was notice to the world that the timber, or the right to harvest the same, belonged to Lawrence Lay-man for 40 years, and any that was not harvested belonged to D. M. Layman. In other words, until removed, D. M. Layman retained an interest in the timber; call it "cutting rights" if you will.

That reservation "any timber not so removed . . . shall belong to said grantors" clearly establishes the intention that the right to harvest the timber was reserved in D. M. Layman, as an individual. To hold now that the Ledgetts, by purchasing "land only" acquired the timber after March 15, 1974, violates the basic tenet that the clear intention of the parties should control.

I dissent.

WRIGHT, C.J., and ROSELLINI and BRACHTENBACH, JJ., concur with HICKS, J.

Petition for rehearing denied May 26, 1978.