The defendants, Grady Reeves and Homer Reeves, appeal from the judgment of the trial court in favor of the plaintiffs, Alabama Land Locators, Inc., Harry Lee Manuel, Jr., and Jan S. Manuel, in this action seeking a declaration of rights to real property. We affirm.
The defendants conveyed a 200-acre tract of land to Joe Clark and Rody Stovall by two separate warranty deeds on July 29, 1981. Those deeds were recorded in the probate judge's office on July 31, 1981. On the day the property was conveyed to Clark and Stovall, Clark executed a "Lease of Hunting Rights" to the defendants, purporting to give them the exclusive right to hunt on the property. Although Stovall did not sign the lease, the absence of his signature is not an issue in the case. The lease, which was for a term of 25 years, was not recorded in the probate judge's office until January 31, 1984. Clark and Stovall conveyed the property to Boyd Foster and Walter Rainey by warranty deed on August 7, 1981. That deed was recorded in the probate judge's office on August 12, 1981. Foster and Rainey conveyed the property to Alabama Land Locators, Inc., *Page 918 
by warranty deed on April 29, 1986. That deed was recorded in the probate judge's office on May 19, 1986. Alabama Land Locators, Inc., conveyed 80 acres of the 200-acre tract to the Manuels by warranty deed on May 19, 1986, and that deed was recorded in the probate judge's office on that same day. The lease of hunting rights was not referred to in any of these deeds. Foster testified at trial that he had no knowledge of the hunting lease when he purchased the property and that, had he known of it, he would not have purchased the property. He testified further that he did not learn of the lease until after he sold the property to Alabama Land Locators, Inc. Alabama Land Locators, Inc., and the Manuels did not learn of the lease until after May 19, 1986. Title examinations made in connection with the sale of the property did not reveal the lease. Several witnesses testified that hunting rights constitute a large part of the value of a piece of property.
The plaintiffs filed a declaratory judgment action in the Circuit Court of Bullock County, seeking a declaration as to the validity of the hunting lease. Following a hearing, the trial court ruled that the lease was void. Thus, the sole issue in this case is whether the trial court ruled correctly.
The defendants rely on § 35-4-6, Code 1975. That section reads as follows:
 "No leasehold estate can be created for a longer term than 99 years. Leases for more than 20 years shall be void for the excess over said period unless acknowledged or approved as required by law in conveyances of real estate and recorded within one year after execution in the office of the judge of probate in the county in which the property leased is situated."
Under this section, a lease for more than 20 years is void for the excess over 20 years unless it is acknowledged or approved as required by law in conveyances of real estate and recorded within one year after its execution. The defendants concede that their lease was not recorded within one year after its execution; therefore, they only contend that they have a valid 20-year lease. The defendants argue that, under § 35-4-6, a 20-year lease does not have to be recorded in the probate judge's office in order for it to be valid as against a subsequent purchaser of the property for a valuable consideration without actual knowledge of the lease. This argument is based on the fact that § 35-4-6 requires that leases exceeding 20 years be recorded in the probate judge's office in order to be valid. It is insisted that § 35-4-6
by implication excludes leases of 20 years or less from the recording requirement of the Recording Act, § 35-4-90, Code 1975.
The plaintiffs rely on § 35-4-90. That section provides, in pertinent part, as follows:
 "(a) All conveyances of real property, deeds, mortgages, deeds of trust or instruments in the nature of mortgages to secure any debts are inoperative and void as to purchasers for a valuable consideration, mortgagees and judgment creditors without notice, unless the same have been recorded before the accrual of the right of such purchasers, mortgagees or judgment creditors."
The plaintiffs argue that the lease in question is a "conveyance of real property" within the meaning of the statute. They argue further that their predecessors in the chain of title, Foster and Rainey, purchased the property without knowledge of the lease; therefore, they say, they now have title to the property free and clear of the interest claimed by the defendants. We agree.
The right to hunt upon the land of another is a profit a prendre. Jones v. Davis, 477 So.2d 285 (Ala. 1985); See also Thompson on Real Property, §§ 135 to 140 (1980). The "profit a prendre," which derives its name from the French, means "profits to take," the phrase "from land" being implied. A profit a prendre is a right exercised by one man in the soil of another, accompanied with participation in the profits of the soil, or a right to take a part of the soil or of the produce of the land. Thompson on RealProperty, § 139 (1980). The right to cut and remove timber from the lands of another is also a profit a *Page 919 
prendre. Ladd v. Smith, 107 Ala. 506, 18 So. 195
(1894). It has been held in Alabama that a lease of timber rights is a conveyance of real property within the meaning of § 35-4-90. In Milliken v. Faulk, 111 Ala. 658,20 So. 594 (1896), the trial court ruled that an unrecorded timber lease was void as to a bona fide purchaser of the land. This Court affirmed, stating:
 "The one material question presented by the record is, whether the agreement between Calloway and Milliken, by which Milliken acquired an interest in and use of the trees for three years, is an unconditional conveyance of real property, within the meaning of section 1810 [predecessor to § 35-4-90], which declares that 'conveyances of unconditional estates and mortgages, or instruments in the nature of a mortgage, of real property, c., are void as to purchasers for a valuable consideration * * * having no notice thereof, unless recorded within thirty days.' The only argument of appellant to show that the agreement is not a conveyance within the meaning of the statute is, that the estate acquired by the agreement was 'personal property,' and not an estate of real property. In the case of First National Bank v. Consolidated Electric Light Company, 97 Ala. 465
[12 So. 71], it was said: 'A chattel real, such as a freehold interest in lands, though personal property, has different attributes, from those of other chattels. It is an immovable thing, attached to and issuing out of lands;' and this we understand to be universally correct. A lease is a contract or agreement for the possession and profits of lands and tenements. — 12 Am. Eng. Encyc. of Law. 976. Strictly speaking, it is not a term applicable to chattels, which are not attached to or issue out of realty. A lease is a conveyance or grant. Winfield Adjudged Words, 356; Rapalje Law Dict., Vol. 2, Lease; Bouvier Law Dict. The use of the word 'lease' in the agreement operated to convey. Growing timber is a part of the realty. It can not be sold and conveyed to another except by instrument in writing. A lease of such interest for a longer period than one year is required to be in writing by the statute of frauds. In our opinion, the instrument conveyed an unconditional estate of real property. If such an instrument is not required to be recorded, there is no law which requires that a lease of lands for a period of twenty years should be recorded. Such a construction would defeat the very purposes of the statute of registration. We are aware that there are conflicting decisions as to whether a lease or an instrument of this character comes within the provisions of the statute which requires the recording of conveyances. — 12 Amer. Eng. Encyc. of Law, 976. We are of opinion that the agreement is within the letter and spirit of the statute, and must be recorded as against innocent purchasers."
Therefore, it follows that the lease in question is a conveyance of real property within the meaning of §35-4-90.
Section 35-4-6 deals with the validity of a lease as between the parties to the lease. It is unnecessary for us to speculate as to why the legislature chose to include in that section a recording requirement that would render void between the parties that portion of an unrecorded lease exceeding 20 years. Section 35-4-90 deals with the validity of an unrecorded lease as between a party to the lease and a subsequent purchaser of the property without actual knowledge of the lease. Although an unrecorded 20-year lease is valid under § 35-4-6 as between the parties to it, it is not valid as against a subsequent purchaser of the property without actual knowledge of the lease. Section 35-4-90 was clearly intended to protect innocent purchasers of real property.
 "It has been declared that the soundest reasons of justice and policy demand that every reasonable intendment should be made to support the titles of bona fide purchasers of real property and that no equity can be any stronger than that of a purchaser who has put himself in peril by purchasing a title for a valuable consideration without notice of any defect in it." 77 Am.Jur.2d Vendor and Purchaser
§ 633 (1975). *Page 920 
This rule has been extended so that a person, even though he has knowledge of a previous claim or interest in land, may purchase from a bona fide purchaser and receive clear title.Walker v. Wilson, 469 So.2d 580 (Ala. 1985). The reason is well stated in 77 Am.Jur.2d Vendor andPurchaser § 718 (1975):
 "It is a general rule that a remote purchaser of real estate whose purchase does not fulfill all the requisites for protection due a bona fide purchaser may nevertheless be accorded protection because of his purchase from one who is entitled thereto. The purpose of this rule is to prevent a stagnation of property and to protect the first purchaser, who, being entitled to hold and enjoy, must be equally entitled to sell. Otherwise, a bona fide purchaser might be prevented from selling his property for full value. In other words, the vendee of the bona fide purchaser is not favored on his own account, but for the sake of him from whom he purchased. It is wholly immaterial of what nature the outstanding interest is, whether it is a lien or encumbrance, or a trust, or any other claim."
The evidence in the present case shows that the hunting lease was not on record at the probate judge's office at the time Clark and Stovall conveyed the property to Foster and Rainey. As a result, Foster and Rainey did not have constructive knowledge of the lease. Foster testified that he had no actual knowledge of the lease and the court found that to be a fact; therefore, for the reasons aforestated, the plaintiffs now have title to the property free and clear of the leasehold interest claimed by the defendants.
We disagree with the defendants' contention that knowledge of the lease must be imputed as a matter of law to Foster and Rainey because the same attorney who drafted the lease also drafted the deed to Foster and Rainey and provided them with a title opinion. The defendants' reliance on FirstAlabama Bank of Huntsville v. Key, 394 So.2d 67
(Ala.Civ.App. 1981), is misplaced. In that case the Court of Civil Appeals held that whether the bank had actual knowledge of the plaintiffs' claim to the property by virtue of a communication made to the bank's attorney was a question of fact for the trial court sitting without a jury. The trial court found that the bank had actual knowledge of the adverse interest, and the Court of Civil Appeals concluded that that finding was supported by the evidence. In the present case, the trial court, sitting without a jury, found that Foster and Rainey had no actual knowledge of the lease when they purchased the property. Our review of the record indicates that that finding is supported by the evidence.
Moreover, we can find no evidence in the record tending to show that the attorney in question was actually aware of the lease at the time he prepared the deed and title opinion for Foster and Rainey. It goes without saying that attorneys handling real estate transactions on a daily basis review many legal descriptions and prepare numerous documents. The fact that the attorney did not advise Foster and Rainey of the lease seems to indicate that he did not recall preparing the lease on the property in question. Of course, because the lease had not been recorded at the time Foster and Rainey purchased the property, it was not discovered when the attorney did his title examination. Under these circumstances, we simply cannot impute knowledge of the lease to Foster and Rainey.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
MADDOX, JONES, SHORES and BEATTY, JJ., concur. *Page 921